**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 8, 2014**

# In the Court of Appeals of Georgia

A14A0905. GOGGINS v. THE STATE.

RAY, Judge.

Following a jury trial, Jesse Jerome Goggins was convicted of child molestation (O.C.G.A. §16-6-4 (a) (1)). He appeals from his conviction and the denial of his motion for new trial, contending that the trial court erred 1) in sending certain evidence out with the jury, 2) by denying his motion for mistrial, and 3) by limiting the scope of evidence regarding his good character and reputation for trustworthiness with children. Goggins also contends that he had ineffective assistance of counsel. Finding no reversible error, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to support the jury's verdict. *Weeks v. State*, 316 Ga. App. 448, 449 (729 SE2d 570)

(2012). The evidence at trial showed that the victim's mother was reading her daughter's diary when she came upon an entry in which the 13-year-old victim, L. G., had written "I love my dad but only the way you should [love] a dad . . . he kissed me!!! and then pulled out his d*** . . . ." Goggins is L. G.'s father. When the mother confronted her daughter about what she had written in her diary, L. G. confirmed that Goggins had used his tongue to kiss her and had exposed his erect penis to her. The mother then reported the sexual abuse to the Richmond County Sheriff's Department and an investigation ensued, culminating in the arrest and indictment of Goggins on two counts of child molestation.

At trial, L.G. testified in detail concerning the sexual acts that formed the basis of the indictment. In addition to her initial outcry to her mother, L. G. also disclosed the sexual abuse to a forensic interviewer and to an investigator with the sheriff's department, all of whom corroborated L. G.'s testimony.[1] Goggins testified in his own defense, and five character witnesses testified on Goggins' behalf. The jury ultimately convicted Goggins on Count 1 of the indictment, which charged him with the offense of child molestation for "exposing his erect penis to [L. G.], with the intent to arouse

---

[1] A video recording of L. G.'s forensic interview was played for the jury, wherein she disclosed Goggins' acts of sexual abuse.

2

[his] sexual desires[.]" Goggins was acquitted on the remaining count of child molestation.

1. Goggins contends that the trial court erred by allowing a portion of L. G.'s diary to go out with the jury in violation of the continuing witness rule and by failing to allow the jury to see other portions of the diary. We find no basis for reversal.

At trial, L. G.'s diary was tendered into evidence without objection. Many of L. G.'s diary entries described her sexual attraction to and encounters with various boys her own age. When it appeared during cross-examination of L. G. that defense counsel might delve into portions of the diary concerning L. G.'s sexual attraction and interest in boys, the trial court cautioned counsel that it was not going to allow any evidence that would violate the rape shield statute under OCGA § 24-4-412. Accordingly, when the jury retired for deliberations, the parties agreed that the diary should not go out with the jury. During its deliberations, however, the jury requested to see the entry from L. G.'s diary concerning Goggins' sexual misconduct. When the trial court asked if there was any opposition to sending the jury a photocopy of the specific page of the diary which contained the entry at issue, Goggins' trial counsel stated that the defense had no objection. Later, the jury asked to see the entire diary.

3

After the trial court discussed the issue with both parties, Goggins' counsel agreed with the trial court that the entire diary should not go out with the jury.

(a) Goggins first contends that the trial court committed plain legal error by allowing the single page containing the entry referencing Goggins' sexual misconduct to go out with the jury in violation of the continuing witness rule. For the reasons that follow, we find no reversible error.

> In Georgia the 'continuing witness' objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.

(Citation and punctuation omitted.) *Hinton v. State*, 233 Ga. App. 213, 213 (1) (504 SE2d 49) (1998).

At trial, L. G. acknowledged that she wrote the entry in her diary regarding Goggins' sexual acts and, when prompted by the State, she read the entry aloud for the jury. Pretermitting the issue of whether the trial court violated the continuing witness rule when it allowed this page of the diary to go out with the jury, we find

4

that Goggins has failed to demonstrate that the alleged error likely affected the outcome of the trial.

As noted above, Goggins did not object to the single page containing the diary entry at issue being sent out to the jury during deliberations. Nevertheless, because the trial in this case occurred after January 1, 2013, we may conduct a plain error analysis to determine if a reversal is warranted. See *Rembert v. State*, 324 Ga. App. 146, 152 (2), n. 8 (749 SE2d 744) (2013) ("Georgia's new Evidence Code, which applies to cases tried after January 1, 2013, allows a court to consider 'plain errors affecting substantial rights although such errors were not brought to the attention of the court.' OCGA § 24-1-103 (d)."). Accord *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012).

Our Supreme Court has adopted the following standard regarding a plain error analysis:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs

5

are satisfied, the appellate court has the *discretion* to remedy the error
— discretion which ought to be exercised only if the error seriously
affects the fairness, integrity or public reputation of judicial
proceedings.

(Citation and punctuation omitted, emphasis in original.) *State v. Kelly*, 290 Ga. 29,

33 (2) (a) (718 SE2d 232) (2011).

Prior to the effective date of OCGA § 24-1-103 (d), which allows appellate

courts to conduct a "plain error" analysis to evidentiary matters, we had consistently

held that a judgment need not be reversed due to a violation of the continuing witness

rule unless the error is harmful. See *Kent v. State*, 245 Ga. App. 531, 533 (3) (538

SE2d 185) (2000) (allowing victim's written statement to go out with jury violated

the continuing witness rule, but the error was harmless since the evidence contained

therein was brought out during trial and evidence of guilt was overwhelming);

*Hinton*, supra at 214 (1) (allowing portion of the trial transcript reflecting a particular

statement made by the defendant to go out with the jury violated the continuing

witness rule, but the error was harmless since the defendant's statement had been

repeated several times throughout the trial). Accord *Roberts v. State*, 282 Ga. 548,

552-553 (10) (651 SE2d 689) (2007) (allowing portion of a document examiner's

report which stated conclusory opinions consistent with his trial testimony to go out

6

with the jury violated the continuing witness rule, but the error was harmless because the report was brief and less detailed than the witness's oral testimony).

However, unlike the harmless-error analysis utilized in the above cases where the appellee had the burden of showing that the error did not likely affect the outcome below, a plain error analysis requires the appellant to make an affirmative showing that the error probably *did* affect the outcome of the trial. See *Wagner v. State*, 311 Ga. App. 589, 594, n. 3 (716 SE2d 633) (2011) (Blackwell, J., concurring specially). "[T]he hurdle to establishing plain error is high, . . . and . . . the failure to specifically articulate how the alleged error satisfies this high standard increases the likelihood that . . . claims in this regard will be rejected." *Kelly*, supra at 32 (1), n. 2.

Although Goggins points out that the page of the diary sent out to the jury "contained some of the very same allegations that [L. G.] had testified to in her testimony," and that "the one page of the diary set[ ] forth what proved to be the condemning allegations about Mr. Goggins' alleged improper actions that [L. G.] had testified to in her direct examination[,]" Goggins has failed to take into account the testimony elicited from all of the other witnesses who corroborated L. G.'s trial testimony, as well as the statements that L. G. made in the video recording of her forensic interview that was played for the jury. Furthermore, the sexual allegations

in L.G.'s diary entry were contained in one brief sentence, and the allegations within that sentence were far less detailed than those elicited during L. G.'s trial testimony. Therefore, we find that Goggins has failed to adequately demonstrate that the error likely affected the outcome of the trial.[2]

(b) Goggins also takes issue with the fact that the trial court did not send the entire diary out with the jury even though the diary was admitted into evidence without objection. However, as the parties agreed that the diary would not go out with the jury, the trial court did not violate any legal rule in this regard.[3] Consequently, Goggins has not met the first, second, and third prongs of the plain error analysis set forth in *Kelly*, supra at 33 (2) (a).

2. Goggins contends that the trial court erred by denying his motion for mistrial when the State referred to a newly discovered sexual allegation against Goggins

---

[2] Because we find that Goggins has not met the third prong of the plain error analysis, we need not reach the issue of whether trial counsel's statement that the defense had no objection to the single page containing the diary entry at issue being sent out to the jury amounts to an affirmative waiver. See *Kelly*, supra at 34 (2) (b), n. 5.

[3] We noted that OCGA § 24-1-106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party *may* require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement." (Emphasis supplied).

8

during its opening statements to the jury. Specifically, Goggins argues that the State failed to provide this information in its initial response to discovery, and that the additional allegation was highly prejudicial and outside the scope of the indictment. We find that this enumeration provides no basis for reversal.

The record shows that approximately five days prior to trial, the prosecutor discovered additional information about the incident that comprised count one of the indictment. Specifically, in addition to exposing his erect penis to L. G., Goggins had allegedly placed his penis in her mouth. The prosecutor immediately disclosed this additional allegation to Goggins' trial counsel. Instead of seeking a continuance upon learning of the newly discovered information, Goggins' trial counsel continued to prepare for trial and then later moved for a mistrial when the prosecutor referred to the additional allegation during opening statements.

"A motion for mistrial is committed to the discretion of the trial court, and ordinarily, the denial of such a motion amounts to an abuse of discretion only when it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Moore v. State*, 319 Ga. App. 766, 770 (4) (738 SE2d 348) (2013). In denying the motion for mistrial, the trial court found that it was undisputed that Goggins' trial counsel was immediately notified of the newly

9

discovered allegation several days before the trial, and that the newly discovered evidence would be admissible if it were shown to be part of the res gestae of the crime for which he was charged.

OCGA § 17-16-4 (c) provides that a party who discovers additional evidence previously requested or ordered which is subject to reciprocal discovery must promptly notify the other party of the existence of the additional evidence. Here, the record shows that the State immediately notified defense counsel of the additional allegation approximately five days before trial, and defense counsel had an opportunity to investigate the issue and/or request a continuance prior to trial. To the extent that Goggins challenges the admissibility of the additional allegation based on the timeliness of the State's disclosure, we find that this argument lacks merit. See generally *Mallory v. State*, 306 Ga. App. 684, 685-688 (1) (703 SE2d 120) (2010) (State's belated production of evidence after the commencement of trial did not affect its admissibility, where State disclosed the evidence as soon as it was discovered and defendant's trial counsel was afforded opportunity to question the propounding witness before he testified at trial, which was apparently sufficient since counsel did not request a continuance).

With regard to Goggins' argument that the additional allegation was highly prejudicial and outside the scope of the indictment, it is well-settled that "[e]vidence of another and distinct crime is admissible if it was committed as a part of the same transaction and formed a part of the res gestae." (Citation and punctuation omitted.) *Prather v. State*, 279 Ga. App. 552, 553 (631 SE2d 758) (2006) (Evidence of defendant's battery of the child victim's grandmother that occurred shortly after the defendant's act of child molestation was admissible as part of the res gestae). Furthermore, "the [S]tate is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial." (Citation and punctuation omitted.) Id. Here, L. G. testified that Goggins had her perform oral sex on him during the incident when he exposed his erect penis to her. Accordingly, the evidence of the oral sex was admissible as part of the res gestae of the crime for which Goggins was charged, despite the fact that he was not charged with the additional crime in the indictment.

For the above reasons, the trial court did not abuse its discretion in denying the motion for mistrial.

3. Goggins contends that the trial court erred when it limited the scope of evidence regarding his good character to testimony of opinion or reputation as to Goggins' general character traits, and by refusing to allow his witnesses to testify as to specific instances of his good conduct. We find this argument to be unpersuasive.

O.C.G.A. § 24-4-405 provides, in pertinent part, as follows:

(a) In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion.

(b) In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct.

Therefore, as a general proposition, on direct examination of a defendant's character witnesses, defense counsel may not go into specific instances of conduct. But where, as here, the defendant testifies as to his good character and such character is an essential element of his defense, both the defendant and his witnesses are permitted to testify on direct examination as to specific instances of the defendant's conduct pursuant to O.C.G.A. § 24-4-405 (b).

12

Although the trial court appeared to rule that Goggins' character witnesses could not testify as to specific instances of Goggins' conduct on direct examination, the record shows that the witnesses were nevertheless able to testify as to certain instances of Goggins' conduct as evidence of his good character. For example, one witness testified that he and Goggins had participated in "several social action projects together, fund raisers, and community events[.]" This witness further described Goggins as "the father of the year," and he made a reference to "all the things he was doing for the kids." He also pointed out that Goggins was a highly respected "provost marshal,"[4] and that he and Goggins "would pray together." Another witness recalled occasions when Goggins went shopping with L. G. to buy her clothes. A third witness testified that he and Goggins were "distinguished military cadets" who were selected to attend airborne school together. This witness further testified that he brought his own child to Goggins' house on several occasions and that he had left his child in Goggins' care unsupervised. The witness testified further that his daughter is "the most valuable thing in the world" to him and that he "[would not] have any problem at all leaving her with Jesse Goggins right now." A fourth

---

[4] In his capacity as provost marshal, Goggins was in charge of law enforcement operations for 11 military hospitals.

13

witness testified that he and his family often visited with Goggins, and that on several occasions he personally observed Goggins interact with his children just as a father should.

As noted above, Goggins was able to present a variety of evidence regarding his good character, including specific instances of conduct. Furthermore, Goggins himself testified as to his extensive work history, in which he held significant leadership positions in the military and ultimately attained the rank of lieutenant colonel. Goggins further testified that, for a period of time, he was the primary caregiver for his children, taking them to school, assisting them with all their homework, cooking their meals, and doing everything else that needed to be done around the house.

In support of his motion for new trial, Goggins submitted affidavits from three of the character witnesses who testified at trial. In each of these affidavits, the respective affiant failed to identify any specific instance of Goggins' conduct that he was unable to testify to. Furthermore, at the hearing on the motion for new trial, Goggins failed to make a proffer as to what specific instances of conduct that the witnesses could have testified to that were allegedly excluded from the evidence. Because Goggins did not perfect the record with a sufficient proffer to show the

existence of specific instances of conduct that were excluded from the evidence, we cannot reach the merits of his claim regarding the exclusion of such testimony. See *Graf v. State*, 327 Ga. App. 598, 602-603 (3) (760 SE2d 613) (2014); *Gawlak v. State*, 310 Ga. App. 757, 757-758 (1) (714 SE2d 354) (2011); *French v. State*, 288 Ga. App. 775, 777 (3) (665 SE2d 224) (2007).

To the extent that Goggins argues that the trial court restricted his character witnesses' ability to testify as to his character trait of moral behavior and trustworthiness with children, this argument is belied by the record. One witness testified that he is comfortable leaving his own child with Goggins. Another witness testified that Goggins was highly recognized and reputable as a father, describing him as "the father of the year." A third witness testified that he had observed Goggins interact with his children on several occasions and that Goggins conducted himself just as a model father would. Based on this collective testimony, any additional testimony regarding Goggins' morality and trustworthiness with children would have been cumulative. Accordingly, we find no reversible error.

4. In his final enumeration of error, Goggins contends that he had ineffective assistance of counsel. As Goggins attacks his trial counsel's performance for a number of reasons, we shall address each in turn.

15

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them, and "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, supra at 697 (IV). Furthermore, there is a strong presumption that counsel's conduct falls within the range of reasonable professional judgment, Id. at 689 (III) (A), and in challenging counsel's strategic decisions, a defendant must show "that no competent attorney, under similar circumstances, would have made [the same decision]." (Citation and punctuation omitted.) *Davis v. State*, 290 Ga. 584, 585-586 (2) (723 SE2d 431) (2012). When a trial court determines that a defendant did not receive ineffective assistance, we will affirm that decision on appeal unless it is

16

clearly erroneous, *Muldrow v. State*, 322 Ga. App. 190, 193 (2) (b) (744 SE2d 413) (2013), "but we independently apply the legal principles to the facts." (Citation omitted.) *Hill*, supra at 164 (4).

(a) Goggins contends that his trial counsel was ineffective in handling the diary. Goggins argument on this issue is two-fold.

(i) First, he argues that his counsel performed deficiently when he allowed the single page of the diary containing the entry which referenced Goggins' sexual misconduct to go out with the jury. Based on our holding in Division 1 (a), we find that the error did not likely affect the outcome of the trial. See *Roberts*, supra at 533 (10); *Kent*, supra at 533 (3); *Hinton*, supra at 214 (1). Accordingly, Goggins has failed to establish prejudice with regard to this issue.

(ii) Second, he argues that his trial counsel compounded the foregoing error by failing to insist that the entire diary go out with the jury. He contends that other portions of the diary contained information concerning the animosity that the victim's mother had towards Goggins after their divorce, as well as the feelings that L. G. had for both of her parents. We find this argument unpersuasive.

Specifically, Goggins refers to portions of the diary where L. G. wrote that her mother had told her that her father had a child with another woman, that her father

17

was using her to obtain more money from her mother, that her father never paid child support, that her father had been sued for $20,000, and that her father had failed to pay for her sister's tuition.[5] Goggins contends that such information was critical to demonstrate the context in which L. G.'s sexual allegations were made and that it raised the possibility that her allegations against Goggins were false.

However, the testimony at trial showed that L. G. loved her father tremendously and that she was angry with her mother because of the divorce. L. G. testified that she fought with her mother a lot, and she acknowledged that she had written in her diary that her mother is "a liar." The mother also acknowledged that L. G. would often write "I hate my mom" in her diary. At the hearing on the motion for new trial, Goggins' trial counsel testified that he and Goggins had reviewed the diary prior to trial and that the diary had no bearing on L. G.'s feelings toward Goggins except for the single page containing the sexual allegations. Trial counsel further testified that most of the diary dealt with L. G.'s feelings toward her mother.

OCGA § 24-6-622 provides that "[t]he state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the

---

[5] Goggins has failed to provide citations to the record regarding any other portions of the diary that would have been relevant or beneficial to his defense.

18

consideration of the jury." Here, however, the evidence of L. G.'s feelings toward her parents showed that L. G. had animosity toward her mother, rather than Goggins. Furthermore, the diary entries which referenced the allegations that Goggins had fathered a child out of wedlock and failed to satisfy his financial obligations regarding his children would likely have undermined Goggins' good character defense. Accordingly, Goggins has failed to establish that he was prejudiced by trial counsel's failure to insist that the entire diary go out with the jury.

(b) Goggins contends that his trial counsel was ineffective in failing to present expert testimony from a psychologist to attack the credibility of L. G. We find this argument to be unpersuasive.

At the hearing on the motion for new trial, Goggins presented the testimony of an expert in psychology who opined that L. G. may have received some secondary gain by disclosing the sexual abuse allegations, i.e. - to gain acceptance from her mother and to reduce the tensions between her and her mother. . However, this theory fails to take into account the fact that L. G.'s allegations were kept secret in her diary until her mother discovered them and that L. G. was later reluctant to discuss the allegations with her mother.

Furthermore, Goggins and his trial counsel discussed the issue of whether to hire a psychologist, and they decided that there were other matters that were more critical to the defense - particularly, the exclusion of similar transaction evidence involving allegations that Goggins had sexually abused his other daughter on two separate occasions. We have held that

> [d]ecisions regarding which witnesses to call and all other tactical and strategic decisions are the exclusive province of the lawyer after consultation with the client. And decisions regarding matters of trial strategy, whether wise or unwise, do not constitute ineffective assistance of counsel.

(Citation and punctuatiobn omitted.) *Davis v. State*, 326 Ga. App. 778, 781 (2) (a) (757 SE2d 443) (2014).

For the above reasons, Goggins has failed to carry his burden of showing ineffective assistance of counsel on this basis.

(c) Goggins contends that his trial counsel was ineffective for failing to request a continuance after the State notified him that L. G. had made an additional allegation that Goggins had placed his penis in her mouth. We find this argument to be unavailing.

20

At the hearing on the motion for new trial, Goggins' trial counsel testified that he and Goggins discussed the issue of whether to request a continuance, and trial counsel advised Goggins that a continuance would give the State an opportunity to re-indict him for aggravated child molestation, a charge which carries a potential life sentence. Goggins and his trial counsel also discussed the effect a continuance may have had on the availability of his witnesses, and there was also a concern that an unfavorable witness who had initially indicated that she would not testify at trial might change her mind and testify if the trial was delayed. Ultimately, Goggins told his trial counsel that he did not want to delay the trial. After considering these factors, Goggins' trial counsel decided not to request a continuance. The record also shows that Goggins' trial counsel used L. G.'s late disclosure of the oral sex to attack her credibility at trial.

As trial counsel's decision to forego a continuance was based on reasonable tactics and strategy after consultation with Goggins, see *Davis*, supra, we find that trial counsel's decision does not constitute ineffective assistance of counsel.

(d) Goggins contends that his trial counsel was ineffective in failing to cross-examine L. G. or her mother regarding the full nature of the relationship between them, as well as the relationship between Goggins and the mother. Goggins has failed

21

to provide cites to the record or any citations of authority to support this argument in violation of Court of Appeals Rule 25 (c) (2). Nevertheless, the record shows that trial counsel elicited testimony during his cross examination of L. G. to show that she had a strained relationship with her mother.

> The scope of cross-examination is grounded in trial tactics and strategy. Trial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.

(Citation omitted.) *Sims v. State*, 317 Ga. App. 420, 424 (2) (731 SE2d 105) (2013). For the above reasons, Goggins has failed to establish ineffective assistance of counsel with regard to this issue.

(e) Goggins contends that his trial counsel was ineffective in failing to provide him with an opportunity to deny the allegation of oral sex. We disagree. The record shows that, during cross examination, trial counsel asked Goggins the following question: "Did you . . . ever during that period of time . . . inappropriately touch, kiss, or do anything with [L. G.]?" Goggins indicated that he had not done anything at all. Accordingly, Goggins' argument with regard to this issue is without merit.

(f) Goggins contends that his trial counsel was ineffective in failing to object to the mother's testimony that she had asked L. G. if Goggins had been drinking at the time of the sexual abuse. We find this argument to be unavailing.

The record shows that the testimony at issue was limited to the witness's statement that she had asked her daughter whether Goggins had been drinking. The State immediately cautioned the mother and did not allow her to delve into this issue any further. Furthermore, Goggins later put his character in issue at trial, thereby opening the door for the State to question Goggins about his consumption of alcohol while in the presence of his children. Under these circumstances, Goggins has failed to establish that he was prejudiced by his trial counsel's failure to object to the mother's testimony.

(g) Goggins contends that his trial counsel was ineffective in failing to object to the lead investigator's testimony at trial that suggested that Goggins had been "grooming" L. G. in order to facilitate the sexual abuse.[6] Specifically, Goggins argues that no foundation had been laid to show that the investigator was qualified to give

---

[6] The term "grooming," as used in this context, refers to a person's actions which are designed to de-sensitize sexual activity and to establish a sexual relationship with a child - i.e., actions such as commenting on the child's appearance, giving the child intimate gifts, exposing the child to pornography, kissing or touching the child intimately, etc.

23

his opinion about this type of activity as it relates to children. We find this argument to be unpersuasive.

In our view, knowledge of the types of behavior that a person would use to groom a child for the purpose of sexual abuse is not necessarily within the scope of the ordinary layman's knowledge and experience. Accordingly, expert testimony on this issue would be proper. However, we have consistently held that a police officer may give opinion testimony regarding his observations if an adequate foundation is laid with respect to his experience and training, even if he is not formally tendered as an expert. See *Yates v. State*, 305 Ga. App. 100, 101 (699 SE2d 43) (2010) (police officer's opinion testimony that the amount of cocaine found on the defendant was consistent with an intent to distribute was admissible, even though the officer was not formally tendered as an expert, because an adequate foundation was laid with respect to his experience and training in narcotics enforcement); *Alexander v. State*, 264 Ga. App. 34, 36-37 (2) (589 SE2d 857) (2003) (police officer was not formally tendered as an expert, but his opinion testimony that the amount of cocaine found on defendant was consistent with an intent to distribute was admissible because a proper foundation had been laid regarding the officer's experience in drug enforcement and knowledge of the customary methods employed in the use and sale of cocaine). See

also *Hammett v. State*, 246 Ga. App. 287, 290 (4) (539 SE2d 193) (2000) (in a prosecution for theft by taking, the trial court tacitly or impliedly accepted a witness as an expert regarding the value of the stolen property, even though he was not formally tendered as an expert, because an adequate foundation had been laid as to his experience); *Lindley v. State*, 225 Ga. App. 338, 340-341 (1) (484 SE2d 33) (1997) (trial court implicitly accepted police officer as an expert, even though he was not formally tendered as an expert, because the officer testified as to his experience in drug investigations).

Here, the investigator testified that during the past six years he had investigated over 200 child molestation cases, and that he has had the opportunity to speak with a multitude of individuals who had confessed to sexually abusing children. He further testified that, based on his knowledge and experience, many of these individuals would employ certain techniques to "groom" their child victims, such as purchasing intimate items of clothing for the child or kissing the child intimately to see what his or her response would be. "[O]nce a proper foundation is laid, an officer may testify about elements of a crime with which he is familiar based upon his experience[.]" (Citation omitted.) *McDaniel v. State*, 263 Ga. App. 625, 629 (2) (588 SE2d 812) (2003).

As an adequate foundation was laid to allow the investigator to testify as to the grooming behavior of child sex abusers and to offer his opinion as to whether Goggins had exhibited such behavior in this case, we find that any objection to the investigator's testimony would have been futile. A trial counsel's "[f]ailure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance." (Punctuation and footnote omitted.) *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012). Accordingly, Goggins' ineffective assistance claim with regard to this issue fails.

(h) Goggins contends that his trial counsel was ineffective in failing to develop the full extent of the evidence of Goggins' good character at trial. Specifically, he argues that all of the character witnesses' testimony was limited to Goggins' general reputation, and that trial counsel failed to elicit the witnesses' opinions regarding Goggins' morality and trustworthiness with children. We disagree.

In support of his argument, Goggins relies upon affidavits from three of the character witnesses who testified at trial. In each of these affidavits, the respective affiant stated that, had he been asked, he would have testified at trial that Goggins is trustworthy with children and that he would have no reservation about leaving his own child with Goggins unsupervised. However, the trial transcript shows that

26

Goggins' trial counsel was able to elicit testimony from some of the character witnesses to show such evidence. One witness testified that he is comfortable leaving his own child with Goggins. Another witness testified that Goggins was highly recognized and reputable as a father, describing him as "the father of the year." A third witness testified that he had observed Goggins interact with his children on several occasions and that Goggins conducted himself just as a normal father would. Although trial counsel may have been able to expand upon such evidence, any additional testimony regarding Goggins' morality and trustworthiness with children would have been cumulative. Accordingly, we find that Goggins has failed to establish ineffective assistance of counsel in this regard.

(i) Lastly, Goggins contends that trial counsel was ineffective in failing to request that the jury be polled after the verdict. We disagree.

Although a criminal defendant has an absolute right to have the jury polled upon a timely request, *Rinker v. State*, 228 Ga. App. 767, 767 (1) (492 SE2d 746) (1997), there is nothing in the record to indicate that Goggins informed his trial counsel that he wanted to have the jury polled after the verdict. Furthermore, we have consistently held that a trial counsel's mere failure to have the jury polled cannot serve as a basis for an ineffective assistance claim. See *Ellison v. State*, 296 Ga. App.

27

752, 756-757 (2) (e) (675 SE2d 613) (2009); *Hodge v. State*, 287 Ga. App. 750, 753 (2) (a) (652 SE2d 634) (2007); *Wynn v. State*, 228 Ga. App. 124, 129 (3) (d) (491 SE2d 149) (1997). Accordingly, Goggins' ineffective assistance claim with regard to this issue fails.

*Judgment affirmed. Andrews, P. J. concurs and McFadden, J. concurs specially in Division 1(a) and concurs fully otherwise.*

A14A0905. GOGGINS v. THE STATE.


MCFADDEN, Judge, concurring specially.

Although I agree with the outcome in this case, I do not agree with all that is said. I specially concur in Division 1 (a) of the majority opinion to the extent that it expresses doubt about whether the trial court violated the continuing witness rule when it allowed a page of L. G.'s diary to go out with the jury. I concur fully in the remainder of the opinion.

The page in question, which L. G. read aloud to the jury, amounted to written testimony about Goggins's sexual acts. Therefore, "it [was] unfair and place[d] undue emphasis on [that] written testimony for the writing to go out with the jury to be read again during deliberations." *Hinton v. State*, 233 Ga. App. 213, 213 (1) (504 SE2d 49) (1998) (citations omitted). "[T]he jury heard the testimony from the witness stand but [it] should not [have been] unduly emphasized by giving the jury an opportunity to read [it] one or more times after hearing [it] read in the courtroom, whereas oral testimony from the stand [was] heard only once." *Thomason v. Genuine Parts Co.*, 156 Ga. App. 599, 601 (275 SE2d 159) (1980). Cf. *Young v. State*, 292 Ga. 443, 446

(3) (b) (738 SE2d 575) (2013) (admission of letter that neither was "the reduction to writing of an oral statement, nor was it a written statement provided in lieu of testimony" did not violate the continuing witness rule).