**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**January 28, 2021**

# In the Court of Appeals of Georgia

A20A1795. HARRIS v. THE STATE.

PIPKIN, Judge.

A jury found Charles Harris guilty of rape, child molestation, and false imprisonment, and he was sentenced to life in prison without the possibility of parole. Following the denial of a motion for new trial, Harris appeals challenging the sufficiency of the evidence and the trial court's failure to fulfill its role as the "Thirteenth Juror." Harris also contends that the trial court erred in admitting evidence and that he was entitled to a mistrial based upon a *Brady* violation. Finally, Harris argues that the cumulative prejudicial effect of the errors warrants the grant of a new trial. For the following reasons, we disagree with Harris's contentions and affirm.

1. As a threshold matter, we note that Harris's brief fails to comply with this Court's rules, which require, among other things, that a brief "contain a succinct and accurate statement of the proceedings below and the material facts relevant to the appeal; a citation of the parts of the record or transcript essential to a consideration of the errors." See Court of Appeals Rule 25 (a) (1). Although Harris challenges the sufficiency of the evidence, he provides no meaningful statement of facts. Rather, he broadly contends that the evidence was insufficient and cites to the "Entire Trial Transcript." However, "[i]t is not the function of this Court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Citation and punctuation omitted). *Patterson v. State*, 327 Ga. App. 695, 696 (1) (761 SE2d 101) (2014).

Our rules also require that a brief "contain the argument and citation of authorities[.]" See Court of Appeals Rule 25 (a) (3). Harris attempts to satisfy this rule, in part, by referring to "grounds, reasons and arguments as were stated, articulated and developed by Defendant's Trial Counsel on the record at Defendant's Jury Trial all of which are incorporated by reference as if fully restated herein." Such an attempt to bootstrap arguments raised below to an appellate brief does not satisfy this Court's requirement that a brief contain argument and citation to authority. See

2

*All Fleet Refinishing v. W. Georgia Nat. Bank*, 280 Ga. App. 676, 682 (6) (634 SE2d 802) (2006).

Harris's failure to fully comply with this Court's rules has hampered our ability to consider the merits of this appeal. We will nevertheless – to the extent we are able – consider those arguments that were raised in the brief and supported by argument and citation of authority.

2. Harris contends that the evidence was insufficient to support the jury's verdict. Specifically, he asserts that there was no evidence other than the victim's testimony in what he describes as a "he said-she said" case.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation and punctuation omitted). *Oates v. State*, 355 Ga. App. 301, 301 (844 SE2d 239) (2020).

Viewed in this light, the evidence shows that the victim lived with her mother and younger sister and that Harris, who was a paternal uncle, lived with them. Harris

would babysit the children while the mother worked overnight shifts. When the victim was seven, Harris began molesting her. The first time, the victim woke at night to find Harris on top of her, "pushing up on" her. The victim felt extreme pain and burning, and she began to cry. After Harris stopped, the victim went into the bathroom to wipe herself and found a "clearish red" fluid on the tissue. After that night, Harris forced himself on the victim on multiple occasions. According to the victim, Harris would pin her arms over her head and kiss her; he went "in and out of her privates" with his "privates," which caused pain. Harris threatened to harm the victim if she told anyone.

The victim's mother noticed changes in the victim's behavior. The victim began to say "mean and hateful things" to her mother and sister, and the mother asked the victim what was happening. At first, the victim was unwilling to tell her mother what was happening, but after Harris was arrested on unrelated charges,[1] the victim told her mother that Harris had been "touching her" and had "kiss[ed] her between her legs." The mother called the police.

Detective David Jones was assigned to the case, and he arranged a forensic interview. During the interview, which was recorded on video and played for the jury,

---

[1] Harris was taken into custody for failing to register as a sex offender.

the victim recounted the abuse she suffered at Harris's hands. She gestured to show how Harris would pin her arms over her head to try to kiss her.

The State also presented evidence from T. F., a similar transaction witness. In the 1980s and 1990s, T. F. lived with Harris, who was the common-law husband of T. F.'s grandmother. T. F. testified that, when she was five, Harris began molesting her. The first time, Harris took T. F. from her bed as she was sleeping, and he penetrated her anus with his penis. Two years later, Harris penetrated T. F.'s vagina. From that point, Harris continued to molest T. F. until she was twelve, when he was caught in an act of molestation.

Harris was charged with numerous offenses, including rape, child molestation based on kissing the victim on the mouth, false imprisonment, aggravated assault, and possession of a knife during the commission of a felony. The jury found Harris guilty of rape, child molestation, and false imprisonment, but acquitted him of the remaining charges.[2]

On appeal, Harris argues that the evidence was insufficient to sustain his convictions because the only "eye witness" testimony came from the victim.

---

[2] The trial court merged the convictions for kidnapping and rape during sentencing.

However, the victim's testimony alone is sufficient to sustain Harris's convictions. See *Torres v. State*, 353 Ga. App. 470, 476 (1) (838 SE2d 137) (2020); *West v. State*, 339 Ga. App. 279, 281 (1) (793 SE2d 180) (2016); *Roberson v. State*, 327 Ga. App. 804, 806 (1) (761 SE2d 361) (2014). Furthermore, the victim's testimony was not the only evidence presented. The jury also heard testimony from a similar transaction witness, which showed Harris's propensity to commit the crime of child molestation. Under these circumstances, the jury was authorized to find Harris guilty. See *Tudor v. State*, 320 Ga. App. 487, 490 (1) (740 SE2d 231) (2013).

3. In a related claim of error, Harris contends that he is entitled to a new trial based upon the trial court's failure to fulfill its role as the "Thirteenth Juror."

> In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury. The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding. When properly raised in a timely motion, these grounds for a new trial – commonly known as the "general grounds" – require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." In exercising that discretion, the trial judge must consider some of the things that [he or] she cannot when assessing the legal sufficiency of the

6

evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence.

(Citations and punctuation omitted). *Massey v. State*, 346 Ga. App. 233, 235-236 (2) (816 SE2d 100) (2018).

The trial court's order makes clear that the judge exercised discretion and considered the weight of the evidence in concluding that Harris was not entitled to a new trial on general grounds. Because the trial court acted within its discretion, we will not interfere with its ruling on appeal. See *Dixon v. State*, 341 Ga. App. 255, 264 (2 ) (b) (800 SE2d 11) (2017) ("A motion for new trial on [general grounds] is not properly addressed to this Court as such a decision is one that is solely within the discretion of the trial court.") (punctuation omitted).

4. Harris argues that the trial court erred in permitting T. F. to testify as a similar transaction witness. According to Harris, the prior acts were too remote in time and the prejudicial effect of admitting the evidence outweighed any probative value.

"In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter

7

to which it is relevant." OCGA § 24-4-414. Under this "rule of inclusion," there is a strong presumption in favor of admissibility of a prior act of molestation. See *State v. McPherson*, 341 Ga. App. 871, 873 (800 SE2d 389) (2017). Such similar transaction evidence is relevant to the issue of whether a defendant has a propensity to commit certain sexual offenses. Id. However, a trial court may still exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Citation and punctuation omitted). *Sturgis v. State*, 356 Ga. App. 219, 221 (842 SE2d 82) (2020). We review a trial court's admission of such evidence under a clear abuse of discretion standard. See id.

The trial court did not abuse its discretion in allowing T. F. to testify. The similarity between the acts of molestation were marked; both involved Harris having access to a young child through familial relations. In both instances, Harris's initial act of molestation involved waking the child in the middle of the night. Harris began penetrating both victims vaginally when they were seven years old, and he molested both victims multiple times. Under these circumstances, the similar transaction evidence was admissible to show "Harris's lustful disposition with respect to [seven-

year old] girls and his pattern of molesting young girls with whom he was living."
*Harris v. State*, 340 Ga. App. 865, 869 (1) (b) (798 SE2d 498) (2017).

The fact that the prior incident took place more than twenty years earlier does not render the evidence inadmissible. As we have held,

> Exclusion of proof of other acts that are too remote in time caters principally to the dual concerns for relevance and reliability. The evaluation of the proffered evidence in light of these concerns must be made on a case-by-case basis to determine whether the significance of the prior acts has become too attenuated and whether the memories of the witnesses has likely become too frail. Neither Rule 403 nor any analogous Rule provides any bright-line rule as to how old is too old.

(Footnote and punctuation omitted). *Harris*, 340 Ga. App. 865 at 868. Although the acts to which T. F. testified happened years ago, the trial court was not required to exclude the similar transaction evidence. *McAllister v. State*, 351 Ga. App. 76, 83-84 (1) (b) (830 SE2d 443) (2019); *Peterson v. State*, 337 Ga. App. 70, 74 (785 SE2d 905) (2016).

5. According to Harris, the trial court erred in allowing Detective Jones – who was not qualified as an expert – to offer expert testimony.[3] During trial, Jones

---

[3] The State did not seek to have Jones qualified as an expert.

testified that he asked the victim's mother to take the victim to a children's hospital for a specialized medical exam. But the mother took the child to a local doctor instead, and no medical personnel testified at trial. The prosecutor asked Jones: "Based on your experience in sexual assault investigations, is there normally DNA in these cases?" Harris objected on the basis that medical expertise was required to answer the question. The trial court overruled the objection "to the extent" that Jones had experience, and Jones responded: "In cases where we are within [sic] the 72-hour window, it's rare that we get . . . DNA. Oftentimes, it may be just epithelial or cell DNA. Nothing like the kind that you probably hear about, the sperm or anything like that." Jones was then asked about injuries, and he said injuries were "also something we don't see too often, believe it or not, because of the tissue that is down there[;] it heals rapidly." Again, Harris objected that Jones was offering medical testimony, but the court permitted the testimony to stand. On appeal, Jones asserts that the trial court abused its discretion in allowing Jones to testify as a medical expert.

> A trial court has broad discretion in determining evidence admissibility. And under Georgia law, evidence which in connection with other evidence tends, even slightly, to prove, explain, or illustrate a fact is probative and relevant. Doubt as to relevancy should be resolved in favor of admission and against exclusion, with the evidence's weight left to the jury.

(Citations and punctuation omitted). *Martinez-Arias v. State*, __ Ga. App. __ (1) (a) (846 SE2d 448) (2020).

"[W]e have consistently held that a police officer may give opinion testimony regarding his observations if an adequate foundation is laid with respect to his experience and training, even if he is not formally tendered as an expert." *Goggins v. State*, 330 Ga. App. 350, 362 (4) (g) (767 SE2d 753) (2014). Here, Jones testified that he had years of experience as an investigator with the special victims unit dealing with child exploitation, and he testified regarding the procedures employed in investigating child exploitation cases. The questions posed to him pertained to the types of evidence normally collected in prosecuting sex crimes against children. Jones was thus authorized to testify that it was common to have no DNA evidence and for child victims of sex crimes to have no physical injury. See id. (investigator authorized to testify regarding grooming techniques used by sexual predators); *Martinez-Arias*, __ Ga. App. __, __ (1) (b) (Latin American school counselor could testify as to Latino cultural norms based upon her first-hand experiences).

Even if Jones crossed a line into offering medical evidence when he testified that "tissue down there . . . rapidly heals[,]" any error is harmless. Again, Jones was permitted to testify that child molestation victims often had no physical injury. See

11

*Goggins*, 330 Ga. App. at 362-363 (4) (g). It is highly unlikely that Jones' additional statement regarding the reason for the lack of physical injury contributed to the verdict. See *Quedens v. State*, 280 Ga. 355, 361-362 (5) (629 SE2d 197) (2006) (error in admitting lay testimony was harmless where there was no reasonable probability that the admission of the evidence contributed to the jury's verdict).

6. Harris alleges that the trial court was required to declare a mistrial based upon the State's failure to provide exculpatory evidence as required by *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LEd2d 215) (1963). During closing argument, the prosecutor argued that the victim's younger sister had been interviewed, but she did not know anything. The State had not previously disclosed to Harris that the sister had been interviewed. According to Harris, the evidence was exculpatory because the victim had said her sister saw Harris remove the victim's underwear. Specifically, Harris argued that the evidence could be used to impeach the victim's testimony.[4] The trial court denied the motion for mistrial.

The Supreme Court's *Brady* holding requires the State to disclose to the defendant evidence that is both favorable to the accused and material to guilt or

___

[4] According to the State, although the prosecutor spoke to the sister, no statement was taken. The sister was included on the list of potential witnesses, but she was not called by the State.

12

punishment. *Moclaire v. State*, 215 Ga. App. 360, 360 (1) (451 SE2d 68) (1994). "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. Such evidence is evidence favorable to an accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." (Citation and punctuation omitted.) Id.

> To prevail on a *Brady* claim, [Harris] must show that the State possessed evidence favorable to him, that he did not possess the evidence and could not obtain it himself with reasonable diligence, that the State suppressed the favorable evidence, and that, if the evidence had been disclosed to him, a reasonable probability exists that the outcome of the proceeding would have been different.

(Citation omitted). *Grant v. State*, 295 Ga. 126, 127 (2) (757 SE2d 831) (2014).

Harris is unable to meet this burden. Harris knew that the victim's allegations involved acts of molestation in a room the victim shared with her sister, and the sister had been listed as a potential witness at trial. Nothing prevented Harris from interviewing the sister to ascertain what – if anything – she knew. The fact that the State did not call the sister to testify suggests that the sister knew nothing about the alleged abuse. Where, as here, Harris could have discovered the alleged impeachment evidence through the exercise of due diligence, he has shown no *Brady* violation. See,

13

*State v. James*, 292 Ga. 440, 441-442 (2) (738 SE2d 601) (2013) (no *Brady* violation where State failed to provide a page from a report; the pagination made clear the page was missing, and a co-defendant was able to obtain the full report).

Furthermore, because the State disclosed the information during closing argument, this is not a case in which the evidence was suppressed or in which the jury was unaware of evidence. Cf. *Dodd v. State*, 293 Ga. App. 816, 820 (2) (668 SE2d 311) (2008) (no *Brady* violation where allegedly exculpatory evidence was introduced at trial). We fail to see how the disclosure of the information before trial would have resulted in a different result.

Finally, Harris has not shown that he was prejudiced by the State's failure to disclose the evidence sooner. The sister was only five years old when the molestation took place. She may have seen Harris remove the victim's underwear and not recognize the act as sinister. Indeed, the victim testified that she attempted to shield her sister from the abuse in order to protect her. Although there is a possibility that the sister's statement may have undermined the victim's credibility, the mere possibility that the evidence might have aided the defense is not sufficient to establish a *Brady* violation. See *Belins v. State*, 210 Ga. App. 259, 260 (2) (435 SE2d 675) (1993). Accordingly, this argument presents no basis for reversal.

14

7. Harris contends that he is entitled to a new trial given the "collective and cumulative prejudice" of the trial court's errors. Georgia has recently adopted a cumulative error rule, stating that "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel – at least where those errors by the court and counsel involve evidentiary issues." See *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020). Here, Harris has not alleged ineffective assistance of counsel, and we have found that the sole error the trial court may have committed in not curtailing Detective Jones's testimony did not contribute to the verdict. Accordingly, Harris has not shown entitlement to a new trial based upon cumulative error. *Showers v. State*, 353 Ga. App. 754, 761 (2) (d) (839 SE2d 245) (2020).

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur*.