51523. ATES v. THE STATE.

SUBMITTED JANUARY 14, 1976 — DECIDED JANUARY 30, 1976 — REHEARING DENIED FEBRUARY 17, 1976 —

648

*E. Kontz Bennett, Jr., Dennis J. Strickland,* for appellant.
*Dewey Hayes, District Attorney,* for appellee.

DEEN, Presiding Judge.

1. It is now too well established to admit of argument that "on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly distinct, independent, and separate from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible," with exceptions not here pertinent. *Bacon v. State,* 209 Ga. 261 (71 SE2d 615); Code § 38-202.

In the present case the defendant was charged with theft by taking of three Western Union Telegraph Company money orders. At the commencement of the trial and in the absence of the jury the judge stated to trial counsel for the state and the defendant that he was concerned with that portion of a motion to suppress evidence dealing with other items taken from the person of the defendant "as the result of a routine search after he had been booked on a charge other than the one for which he is on trial now. My concern is I don't want to bring [out] the character of the defendant in evidence. . . I don't want his character put in issue by showing that he has been arrested for a crime other than the one for which he's on. . . I want to lay down some ground rules on that . . . Who is your witness that is going to prove that you got these things?" The district attorney replied: "I'll try to go back and tell them to state nothing except that he was being. . . not that he was there for some other cause; that this was a routine inventory search. In other words, not bring out the other charge." He then left the courtroom. The trial commenced shortly thereafter.

The third witness the state put on the stand was a member of the City of Douglas Police Department. On cross examination he was asked whether at the time of search he had a warrant charging Ates with taking the money orders. In the course of the question he warned: "Do you understand my question? It's not necessary to

volunteer anything. All you've got to say is yes or no. A. No, I didn't have a warrant for the money order, no. Q. Did you tell Robert James Ates that you had a warrant for his arrest for the money orders? A. No, I did not. I told him I had a warrant for his arrest for bad checks."

The court cannot help but feel, in the light of the preliminary conference between the court and counsel, the district attorney's statement that he would instruct them not to bring out "the other charge" (the warrant for bad checks) and the express reminder of counsel that in asking the quoted question he should volunteer nothing, the witness' statement: "I had a warrant for his arrest for bad checks" was a knowing and purposeful effort to get inadmissible and prejudicial information before the jury. We must assume that he had already been warned by the district attorney not to say these particular words, as otherwise we would have to assume that the district attorney was himself misleading the court, a presumption which the evidence totally fails to suggest. We must therefore assume that the "voluntary" remark was a deliberate attempt to frustrate the court's ruling, and to introduce inadmissible evidence of other offenses.

In *Felton v. State,* 93 Ga. App. 48, 49 (90 SE2d 607) it was stated: "Everyone is presumed to know the law, of which the rules of evidence are a part, and although this is a violent presumption as to both lawyers and judges, and especially so as to laymen, if any layman is conversant with that principle of law which prohibits the injection into a case under ordinary circumstances of other crimes committed by the defendant on trial, it is a peace officer whose duties often involve testifying as to his part in the investigation of a case, . . . as special training in the field of criminal procedure. Such witnesses cannot be permitted by 'voluntary' statements to circumvent the letter and meaning of the law so as to inject into the case illegal elements for which counsel, including the solicitor, would be held fully responsible if the answer were elicited by a direct question."

*Felton* was reversed because of this interjection by a police officer that the defendant was apprehended while engaged in the same type of crime as that for which he was on trial. The same situation applies here, with the added

force that the witness had been warned by counsel for both sides to refrain from such action. Under the circumstances, and in spite of the court's efforts to disabuse the minds of the jury of the testimony, this case should be tried again. Any ruling that the flouting of the fundamental rules of evidence, after they have been called to the attention of a law enforcement officer, is harmless error, only opens the door to a multiplication of abuses.

2. An objection to a question concerning one of the money orders, "What if it was filled in different?" was properly sustained. It was, however, not an inflammatory question as contended and the court correctly overruled the motion for mistrial.

3. It was not error to admit in evidence Exhibits 8, 9 and 10 showing identification cards with false names and pictures of the defendant for purposes of impeachment, nor to allow the district attorney to comment thereon in his concluding argument.

The remaining special enumerations of error, not being argued, are treated as abandoned. The general grounds are without merit.

*Judgment reversed. Quillian and Webb, JJ., concur.*