## A09A1822. JACKSON v. THE STATE.
(691 SE2d 553)

ADAMS, Judge.

Anthony Albert Jackson was convicted of two counts of aggravated assault, two counts of aggravated battery, and burglary.[1] He appeals, arguing the trial court erred by denying his motion for new trial.

The transcript shows the following: On January 15, 2006, Darryl Wall was spending the night with Nicole Chisholm at her apartment. Wall testified he stayed there two to three times a week, although he did not keep any belongings there, and that they had an on-again, off-again relationship for several years. Wall testified that they had just finished having sex[2] and that he had his eyes shut and was trying to go to sleep when Jackson, with whom Chisholm also had an on-again, off-again relationship spanning approximately a decade, came into the bedroom, attacking him with a knife. Wall testified that he was on his back when Jackson came into the room, and that he had just started to sit up when Jackson stabbed him between the shoulder blades; the blade lodged in his back and the handle came off as he and Jackson continued to struggle. Wall was paralyzed as a result of this injury.

On direct examination, Wall testified that Jackson tried to reach for a bat that Chisholm kept beside the bed but that no one put their hands on the bat that night. On cross-examination he acknowledged that in a previous hearing he had testified that there was no bat, but on further cross-examination he admitted that there was a bat in the room and that he and Jackson struggled over the bat.[3] Wall further testified that after he and Jackson "tussled" for a few more minutes, Jackson ran down the stairs and Chisholm followed him. When she

---

[1] The assault and battery charges were merged for sentencing.

[2] Wall acknowledged on cross-examination that Jackson may have witnessed him and Chisholm having sex.

[3] Investigators were apparently not informed about the bat and it was never located.

returned upstairs, there were multiple cuts over her entire body.

Chisholm testified next. According to her testimony, she and Jackson had known each other since 1997 and had an on-again, off-again relationship, until about two months before the incident here, when they broke up and he moved out of her house. She had known Wall for about five or six of those years, and sometimes when she was not involved with Jackson, she would be involved with Wall. However, even after he left, Jackson continued to have personal belongings at her house and continued to visit there because of their daughter. According to Chisholm, she had changed the locks the day before the incident, and Jackson did not have permission to be in the home that night.

Chisholm testified that she had picked up Wall from his sister's house that night and brought him back to her house to spend the night. Although Chisholm testified she thought Jackson did not come into the room until after she and Wall finished having sex, she could not be certain of the timing of his arrival. She testified that he tried to pin her to the bed with his legs and then he and Wall started struggling. She noticed that Jackson had a knife in his hand and that after they continued to "tussle" she saw the knife in Wall's back. She testified that they then began struggling with the baseball bat that had been beside the bed. She was also "tussling" with them, and at some point she was cut on the hand. Chisholm testified that Jackson then went down the stairs and she followed him to call the police. However, Jackson turned around on the stairs and began cutting her with another knife, inflicting multiple wounds. On his way out, Jackson took her purse. Chisholm also testified that she and Jackson frequently had physical altercations in the past, and that she had previously cut him with a knife during one of those.

On cross-examination, Chisholm testified that Jackson still had clothes in her apartment, but that Wall did not keep any clothes there. Chisholm testified that the bat stayed on her side of the bed and that she did not know what happened to it after that night. Defense counsel questioned Chisholm concerning whether she got rid of the bat and some of her clothes because those items had Jackson's blood on them.

Other evidence presented at trial will be recounted as necessary to address this appeal.

1. In his first two enumerations of error, Jackson argues the trial court erred by refusing to grant his motion for a mistrial after both Wall and Chisolm gave testimony indicating that Jackson had previously been incarcerated. As to this issue, the transcript shows that Jackson made a pre-trial motion to exclude any evidence of his character or prior record. The trial court, noting that Jackson had five prior convictions, granted the motion and instructed the pros-

YALE LAW LIBRARY

ecutor: "Please do not let that come out in evidence, please do not let any of the witnesses testify to the fact that he may have a prior conviction or that he's on probation or been on parole. Please." Before they testified, the prosecutor instructed both Wall and Chisholm not to mention previous arrests, convictions, probations, paroles or incarcerations.

However, during cross-examination, Wall was asked if Chisholm was living with Jackson at the time he "came into the picture." Wall testified, "I think he was incarcerated somewhere. When I first got involved with her he was incarcerated." Defense counsel immediately and repeatedly moved for a mistrial. The trial court denied the motion and, outside the presence of the jury, admonished the witness that "it better not happen again. Am I clear?" The trial court also instructed the jury to disregard the testimony and not consider it in their deliberations. The members of the jury responded affirmatively when asked if they could follow the judge's instruction.

The next witness to testify was Chisholm. Very early in her testimony, she was asked what Jackson did to try and be a father to their daughter. She responded that he provided for their daughter, and then she added that the only time he was not there was when he was incarcerated. Defense counsel moved for a mistrial, and the trial court once again instructed the jury to disregard the testimony concerning Jackson's incarceration. And once again the jury indicated they could disregard the testimony. At the request of the prosecutor, the trial judge also cautioned the witness not to make any further reference to Jackson's prior incarcerations. Defense counsel then renewed the motion for mistrial, arguing that both witnesses intentionally divulged the information with "hardly any provocation or any questions being asked." Counsel also argued that at that point, there was no way to "un-ring" the bell. The trial court once again denied the motion, noting that the members of the jury had indicated they could disregard the testimony. The trial court added, however, that if it happened again, a mistrial would "probably" be granted.

> A trial court has the discretion to grant a mistrial or to give curative instructions, and this court will only interfere with that discretion when granting a mistrial is "essential to the preservation of the right to fair trial." *Smith v. State*, 244 Ga. App. 165, 168 (534 SE2d 903) (2000). When determining whether the trial court abused its discretion, we consider the statement itself, other evidence against the accused, and the actions of the trial court and counsel dealing with the impropriety. *Martin v. State*, 240 Ga. App. 901, 902 (525 SE2d 728) (1999).

*Hensley v. State*, 300 Ga. App. 136, 137 (684 SE2d 673) (2009).

Relying on *King v. State*, 261 Ga. 534 (407 SE2d 733) (1991) and like cases,[4] Jackson argues the trial court erred in refusing to grant a mistrial. In *King*, two of the State's witnesses referred to the defendant's prior incarceration after having been specially instructed not to mention that the defendant had been in jail. Id. at 534 (2). Although our Supreme Court held that the trial court did not abuse its discretion by refusing to grant a mistrial after the first witness, the defendant's former girlfriend, violated the instruction, it went on to hold that a mistrial was mandated when a veteran police officer also referred to defendant's previous incarceration.

But, as the State points out and Jackson acknowledges, although it has never been expressly overruled, "the 'strict' rule of *King* may have eased in the years since."[5] For example, in *Junior v. State*, 282 Ga. 689 (653 SE2d 481) (2007), our Supreme Court found that a "passing reference" by law enforcement that implied the defendant might have been in jail did not place the defendant's character in issue. See also *Taylor v. State*, 272 Ga. 559, 561 (2) (c) (532 SE2d 395) (2000) ("mere mention" by a law enforcement officer that the defendant had been in jail "falls short of placing his character at issue"). Another line of cases has developed in which our courts have held that "[a] nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue." (Citation and punctuation omitted.) *Adams v. State*, 274 Ga. 854, 855 (2) (561 SE2d 101) (2002). In that case, our Supreme Court found that under the circumstances there — nonresponsive answer, curative instructions given, strong evidence of guilt — it was not an abuse of discretion to deny the motion for mistrial, even though the testimony was given by a detective testifying on direct examination for the State. Id.

And both of our appellate courts have distinguished *King* in cases which did not involve testimony from state actors, such as police officers, "who should know better" and in cases where the witness, even a law enforcement official, has not been instructed to

---

[4] *Chavous v. State*, 205 Ga. App. 455, 456 (2) (422 SE2d 327) (1992) (law enforcement officer violated stipulation); *Smith v. State*, 156 Ga. App. 250 (274 SE2d 646) (1980) (mistrial required when a state's witness gave unresponsive testimony indicating he had seen one of the defendants on trial for murder); *Ates v. State*, 137 Ga. App. 647 (224 SE2d 767) (1976) ("Any ruling that the flouting of the fundamental rules of evidence, after they have been called to the attention of a law enforcement officer, is harmless error, only opens the door to a multiplication of abuses.").

[5] The Supreme Court did expressly overrule the case of *Boyd v. State*, 146 Ga. App. 359 (2) (246 SE2d 396) (1978) to the extent it could be interpreted as establishing a per se rule requiring a mistrial anytime a police officer interjects this type testimony. *Sabel v. State*, 250 Ga. 640, 643 (5) (300 SE2d 663) (1983), overruled on other grounds, *Massey v. Meadows*, 253 Ga. 389, 390 (321 SE2d 703) (1984).

avoid mention of a defendant's prior criminal record. Thus, in *Owens v. State*, 250 Ga. App. 61, 62 (550 SE2d 464) (2001), we distinguished *King* noting that the police officer who testified there had not been instructed not to mention that the defendant had a parole officer; moreover in that case the defendant declined a curative instruction and elected instead to explain why he had a parole officer, he failed to renew his motion for mistrial after declining the instruction, and the reference was in passing. And in *Jackson v. State*, 267 Ga. 130 (475 SE2d 637) (1996), our Supreme Court noted that a mistrial was not necessary "where, as here, the witness is not a police officer and there is no instruction to the witness." Id. at 132 (6). See also *McGee v. State*, 267 Ga. 560, 564 (3) (480 SE2d 577) (1997); *Starks v. State*, 240 Ga. App. 346 (523 SE2d 397) (1999) (curative instruction sufficient when no specific instruction had been given to the officer regarding the objectionable testimony); *Morgan v. State*, 161 Ga. App. 484, 487 (9) (287 SE2d 739) (1982) (police officer was merely responding in narrative form and had received no warning regarding testimony about other offenses).

It is against this backdrop that we turn to the facts and circumstances of the present case, noting again the relevant circumstances to be employed in analyzing this issue — "includ[ing] the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety." *Sabel v. State*, 250 Ga. at 644 (5).

Turning first to the statements themselves, in both instances the testimony, although not entirely unresponsive, was gratuitous and unnecessary to answer the questions posed. Further, we would not characterize this testimony as either "passing" or oblique. Indeed, Wall twice mentioned Jackson's incarceration in consecutive sentences. And both witnesses testified clearly that Jackson was "incarcerated," using the same terminology and leaving no doubt of their meaning.

Looking outside the statements themselves, first and foremost is the consideration that both witnesses had been specifically instructed to avoid referring to Jackson's previous criminal history in any manner. Thus, this case is akin to those cases involving law enforcement officers "who should know better." As Jackson points out, not only should these witnesses have known better, they did know better, having been specifically instructed not to make any reference to Jackson's previous incarcerations.

Moreover, although we do not have the cumulative error rule in this context, it is nevertheless hard to ignore that the jury had to be instructed to disregard testimony by both victims using the same terminology; they had to be told to un-ring the bell not once, but

twice. Surely a point is reached where curative instructions will be ineffective.

Turning next to a consideration of the evidence, the State argues that a new trial is not mandated because of the "strong evidence" establishing Jackson's guilt. It is true that both victims identified Jackson as the person who inflicted their injuries. But both of these witnesses at times gave testimony that was vague, ambiguous, conflicting and contradictory, as brought out by defense counsel during cross-examination and stressed during closing argument to the jury. Jackson's defense was premised on these contradictions and conflicts — that the jury could not know what really happened that night because the victims were not telling the truth, particularly about key evidence, such as whether he was still living in the home and had a right to be there,[6] and the baseball bat that Wall at first refused to acknowledge was used in the struggle and which was never found.[7] That these were matters of credibility for the jury to decide is all the more reason that Jackson would more likely be prejudiced by the jury hearing that he had a criminal record prior to this incident.

Based on the foregoing, we conclude that Jackson's right to a fair trial was prejudiced by improper testimony concerning his prior incarceration. Jackson is thus entitled to a new trial on this basis. Compare *Hensley v. State*, 300 Ga. App. at 137 (mistrial not essential to the preservation of the right to fair trial when comment was fleeting and incomplete and the evidence of guilt was overwhelming).

2. Jackson's next enumeration assigns error to the trial court's refusal to allow him to use Wall's June 28, 1996 guilty plea to impeach him. It appears that additional evidence may have been developed on this issue after trial, including that the offense was discharged under the First Offender Act, see *Butler v. State*, 285 Ga. 518 (2) (678 SE2d 92) (2009). Thus, we decline to rule on this issue since it may not recur upon retrial or, if it does, the trial court's ruling may have a different basis. Finally, we have examined Jackson's remaining enumerations of error and find that they are either without merit or unlikely to recur upon retrial.

*Judgment reversed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED FEBRUARY 18, 2010.

---

[6] As to this issue, Jackson's counsel elicited testimony that Jackson still had personal effects at the apartment, that his daughter and a niece thought he was still living there and that there were no signs of forced entry into the apartment.

[7] As stated previously, Jackson sought to establish that Wall and Chisholm had gotten rid of the bat because it had his blood on it.

418

*Steven L. Sparger*, for appellant.

*Larry Chisolm, District Attorney, Arvo H. Henifin, Assistant District Attorney*, for appellee.