**FIFTH DIVISION**
**MILLER, P. J.,**
**DILLARD, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A2041. HARRIS v. THE STATE.

REESE, Judge.

A jury found George Harris guilty of six counts of child molestation,[1] and the trial court sentenced him to forty years of imprisonment, to serve thirty. Harris appeals from the denial of his motion for new trial, contesting the admission of similar transaction testimony, the sufficiency of the evidence, and the failure to merge his convictions for sentencing. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that the victims, who were ten and eleven years old at the time of trial, were the granddaughters of a woman who was Harris's girlfriend at the time of the alleged acts

---

[1] OCGA § 16-6-4 (a) (1).

[2] _Manuel v. State_, 289 Ga. 383, 384 (1) (711 SE2d 676) (2011).

of molestation.[3] The victims, their two brothers, and their mother lived with the victims' grandmother and Harris. When the younger victim was seven years old, she told her brother that her "tee-tee was burning . . . because of [Harris]." The younger victim and her brother told their mother, who took the girls to the hospital for an examination.

At trial, the younger victim testified that Harris had touched her with his hand where she went "number one" more than one time on different days, and that she had seen him touching his "thing" that he used when he went to the bathroom. The older victim testified that, on more than one occasion, she had seen Harris touch her sister with his hand on her front "private part." Harris had also touched the older victim's "tee-tee" and "bottom" and had tried to get her to touch his "private part."

The examining doctor called the police, and, later that morning, a detective conducted videotaped forensic interviews of the girls. The detective testified at trial and identified the videotaped interviews,[4] which were played for the jury. During the

---

[3] Harris had married the victims' grandmother by the time of trial.

[4] The appellate court record transmitted from the trial court contained *photocopies* of the DVDs of the interviews with the victims; the DVDs were not included in the record. We note that Court of Appeals Rule 18 provides in part:

(b) Recordings. When the notice of appeal directs that transcripts of a

interview, the younger victim told the detective that Harris had touched her private

area more than once and indicated on a female anatomical drawing where Harris had

touched her. She said that Harris touched his penis during these incidents and grabbed

trial or a hearing be included in the record, copies of all video or audio recordings that were introduced into evidence shall be transmitted to this Court along with the trial or hearing transcript. It shall be the responsibility of the party tendering the recordings at a trial or a hearing to ensure that a copy of the recording is included in the trial court record; however, it is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal, including the transmission of video or audio recordings. If a transcript of a trial or a hearing is designated as part of the appellate record, the clerk of the trial court shall then include the copy of the recording in the appellate record transmitted to this Court. If a copy of a recording played at a trial or a hearing is not included with the transcript designated to be transmitted in the appellate record, this Court may take whatever action is necessary in order to ensure completion of the record, including, but not limited to, issuing a show-cause order requiring an explanation of its absence. The appellant's failure to complete the record may also result in this Court declining to consider enumerations of error related to the missing evidence.

(c) Proprietary Software. Copies of any video or audio recordings of evidence shall be submitted to this Court on DVD or on video or audio compact disc, and shall include any proprietary software necessary to play the recordings.

Although this Court ultimately obtained copies of the DVDs from the trial court, we reiterate that the burden remains on the appellant to perfect the record on appeal. Because this is a recurring problem, we also remind the trial court clerks that they should not send us photocopies of a DVD, but should instead remit an actual reviewable DVD.

the older victim's hand to try to get her to touch his penis. The older victim initially told the detective that Harris had touched her genitalia, but later denied it. Because the younger victim described Harris's penis, the detective obtained a search warrant to obtain photographs of his penis, which were introduced into evidence at trial.

The examining physician, who was qualified as an expert in emergency room pediatric medicine, testified that the younger victim referred to her genital area as her "tee-tee" and that this was a common term for a vagina at the child's age. The doctor testified that the younger victim reported that her vagina hurt because Harris had touched her there. She also testified that the older victim told her that she had seen Harris touching her sister's private part. The older victim denied that Harris had touched her genitalia, but said that he had asked her to touch his penis. The doctor testified further that the younger victim had erythema (or redness) on her right labia minora, which was not conclusive evidence of molestation, but could have resulted from excessive touching.

The trial court granted a directed verdict on one count of the indictment involving the younger victim, and the jury found Harris not guilty of one count involving the older victim. The jury found Harris guilty of the remaining six counts

of child molestation. The trial court denied Harris's motion for new trial. This appeal followed.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[5] As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[6]

With these guiding principles in mind, we turn now to Harris's specific claims of error.

1. Harris argues that the trial court erred in admitting similar transaction evidence at trial.

OCGA § 24-4-414 (a) provides that, "[i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be

---

[5] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[6] *Watkins v. State*, 336 Ga. App. 145, 146 (1) (784 SE2d 11) (2016) (citation and punctuation omitted).

5

considered for its bearing on any matter to which it is relevant." "[I]n this specific context, showing a disposition toward molestation is a relevant purpose and not unfairly prejudicial in light of the nature of that conduct."[7] "[A] trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion."[8]

(a) Harris contends that the State failed to provide timely notice of its intent to introduce similar transaction evidence under OCGA § 24-4-414 (b).[9]

---

[7] *Eubanks v. State*, 332 Ga. App. 568, 571 (2) (774 SE2d 146) (2015). See also *Arbegast v. State*, 332 Ga. App. 414, 417, n. 1 (2) (a) (773 SE2d 283) (2015) ("[I]n general, the new Evidence Code eliminates bent of mind and course of conduct as permissible purposes for the admission of similar transaction evidence. But in criminal proceedings in which the defendant is accused of a sexual assault or child molestation, the new Code includes provisions for the admission of certain prior sexual assaults or child-molestation offenses for bearing on any matters to which they are relevant.") (citations and punctuation omitted).

[8] *Silvey v. State*, 335 Ga. App. 383, 386 (1) (780 SE2d 708) (2015) (citation and punctuation omitted).

[9] OCGA § 24-4-414 (b) provides:

In a proceeding in which the state intends to offer evidence under this Code section, the prosecuting attorney shall disclose the evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that the prosecuting attorney expects to offer, at least ten days in advance of trial, unless the time is shortened or lengthened or pretrial notice is excused by the judge upon good cause shown.

6

In August 2012, the State provided notice of its intent to present evidence of similar transactions, pursuant to the old Evidence Code.[10] On April 25, 2013, 11 days before trial started, the State filed a notice under the new Evidence Code, listing the same witnesses. A hearing on the admissibility of the similar transaction evidence was held on April 30, 2013. The trial court overruled Harris's objection that the notice was not timely, finding that the notice was proper and that, even if the hearing was not timely held, the period for providing notice should be shortened or excused for good cause shown during the hearing.

Harris seems to argue that the State did not provide notice of its intent to present evidence of similar transactions until six days prior to trial, the date of the hearing on the admissibility of the similar acts evidence. Even assuming that Harris did not receive the April 25, 2013 amended notice until the hearing five days later, we find no harmful error. Harris has not demonstrated that the notice provided under the old Evidence Code in August 2012 was insufficient to satisfy OCGA § 24-4-414 (b). Moreover, Harris does not allege error with respect to the trial court's finding of good cause to shorten the pretrial notice period. We thus find no error.

---

[10] See Ga. L. 2011, p. 99, §§ 1, 101 (adopting the new Code, effective January 1, 2013).

7

(b) Harris argues that the trial court erred in allowing his younger sister, C. H., to testify about a similar transaction because it had occurred approximately 44 years earlier.

C. H. testified that, she and Harris grew up in the same household. On three occasions when she was approximately 13 years old, Harris pinned her against furniture or the floor in a "bear hug," pulled down his pants, and attempted to "put his private into [her]" before she managed to get away.

> Exclusion of proof of other acts that are too remote in time caters principally to the dual concerns for relevance and reliability. The evaluation of the proffered evidence in light of these concerns must be made on a case-by-case basis to determine whether the significance of the prior acts has become too attenuated and whether the memories of the witnesses has likely become too frail. Neither Rule 403 nor any analogous Rule provides any bright-line rule as to how old is too old.[11]

---

[11] *United States v. Larson*, 112 F3d 600, 605 (II) (2nd Cir. 1997); accord *United States v. Meachem*, 115 F3d 1488, 1492 (10th Cir. 1997) ("No time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses."). "Our new Evidence Code was based in large part on the Federal Rules of Evidence. And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015) (citation omitted). See also *Eubanks*, 332 Ga. App. at 571, n. 10 ("The new Georgia

Although C. H.'s testimony was remote in time, the trial court did not clearly abuse its discretion in allowing C. H.'s testimony, as it was relevant to show Harris's lustful disposition with respect to preteen or teenaged girls and his pattern of molesting young girls with whom he was living.[12]

(c) Harris also argues that the trial court abused its discretion in allowing S. H. (C. H.'s daughter and Harris's niece) to testify as a similar transaction witness. He contends that the prejudicial effect of her testimony substantially outweighed any probative value where she alleged only that he had kissed her, and did not allege any other inappropriate touching, and had made no outcry until approximately ten years later.

S. H., who was twenty-two years old at the time of trial, testified that, when she was nine years old, Harris had approached her, given her a "long hug," and kissed

---

evidence rule governing the admission of other crimes in child molestation cases, OCGA § 24-4-414 (a), tracks Federal Rule of Evidence 414 (a).") (citation and punctuation omitted); *Williams v. State*, 328 Ga. App. 876, 879 (1) (763 SE2d 261) (2014) (OCGA § 24-4-403 tracks Federal Rule of Evidence 403); *United States v. McGarity*, 669 F3d 1218, 1244, n. 32 (V) (B) (11th Cir. 2012) (evidence admitted under Rule 414 (a) must also satisfy Rule 403).

[12] See *United States v. Bentley*, 561 F3d 803, 815 (IV) (8th Cir. 2009) (trial court did not abuse its discretion in admitting testimony that tended to show defendant's propensity to molest young girls who were family members or who lived in his home).

her, trying to put his tongue in her mouth. This happened on two or three occasions. We find no clear abuse of discretion in the admission of S. H.'s testimony as it demonstrated Harris's lustful disposition toward girls of a similar age as the victims and his pattern of initiating sexual contact with young female family members.[13]

(d) Harris contends that the trial court erred in admitting the testimony of J. W. because its prejudicial effect outweighed its probative value, as the alleged incident about which she testified had occurred sixteen years earlier, there were no witnesses, and no report was ever made to the police.

J. W., who was 29 years old at the time of trial, testified that she had lived across the street from Harris as a child and had visited his house when her uncle was dating Harris's sister, C. H. On one occasion when J. W. was 13 years old, she was at Harris's home when he cornered her in a bedroom, grabbed her, fondled her butt and breast, kissed her on the neck, and touched her private area. J. W. ran out of the house and later told her uncle and C. H. C. H. testified that she confronted Harris after J. W. reported the incident, and he kicked her and her family out of the house.

---

[13] See *United States v. Benally*, 500 F3d 1085, 1092-1093 (III) (10th Cir. 2007) (no abuse of discretion in admitting evidence of prior incidents which, like the charged offense, involved young women whom the defendant previously knew, two of whom were close relatives).

Harris has failed to show a clear abuse of discretion in the admission of J. W.'s testimony, as it also demonstrates a pattern of molesting young girls of a certain age in his home.[14]

(e) Harris contends that the trial court abused its discretion in allowing the victims' mother to testify that she had observed him masturbating in his home, arguing that there was no link between the legal act of masturbation and the crimes charged.

The victims' mother testified that, prior to her younger daughter's outcry, she had seen Harris masturbating in his bedroom on three separate occasions during the time that she and her children lived in his home. The mother also testified that the door of Harris's bedroom had been open while he was masturbating and that her whole family was home on all three occasions.

The trial court did not abuse its discretion in admitting this evidence because it was relevant to an issue other than Harris's character and its probative value was

---

[14] See *United States v. LeMay*, 260 F3d 1018, 1028 (C) (9th Cir. 2001) (prior acts of child molestation were highly relevant where each incident involved forced oral copulation with young relatives whom the defendant was babysitting).

not substantially outweighed by the danger of unfair prejudice.[15] Specifically, the evidence was relevant to show a pattern of conduct because the victims reported that Harris had exposed himself to them on other occasions while his bedroom door was open, even though there were other people in the house.

2. Harris argues that he was denied a fair trial based on the outburst of a prosecution witness.

The week before trial started, the court heard testimony from two prospective similar transaction witnesses: Harris's sister, C. H., and C. H.'s daughter, S. H. After the prosecutor asked her about her children, C. H. testified that her 34-year-old son had died unexpectedly of a heart attack the day before. The man had broken his back the year before and had been paralyzed from the chest down.

---

[15] See OCGA § 24-4-401 ("'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."); OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."). See generally *Olds v. State*, 299 Ga. 65, 69-70 (2) (786 SE2d 633) (2016).

At a hearing on the first day of trial, before the jury was selected, defense counsel reminded the court that a family member of a witness had died unexpectedly and requested that it not be mentioned at trial as it was irrelevant and prejudicial. The court instructed the State to tell its witnesses not to mention the man's passing.

During cross-examination on the second day of trial, the following exchange took place between defense counsel and C. H.:

Q: In 1994, how many children did you have?
A: Let's see. . . . I had six. I had six children. . . .
Q: [A]t the time you went to live in [Harris's] house, give me the names and ages of your children.
A: Are you kidding?
Q: No–no kidding allowed.
A: Wait a minute, let's see. Oh–look, I can't think like that right now. I mean, come on.
Q: I'll tell you what. I'll tell you what–give me the names.
A: Okay. [First child's name]
Q: How old is [the first child] now?
A: [He] . . . just turned twenty-four . . . .
Q: He's twenty-four now?
A: Yes.
Q: So in 1994, he would have been how old?
A: I don't know. You do the math. I just–I just told you.
Q: Five years old?

13

A: Sir, I just buried my son. Don't do this to me, please. I just buried my son, okay? Saturday–you already know that. Don't stress me out no more–

[DEFENSE ATTORNEY:] Can we approach?

THE WITNESS: I can only tell you what happened to me–what he did to me–

[DEFENSE ATTORNEY:] Can we approach?

THE WITNESS: except for what I told y'all he did. I'm not lying. He needs to confess. (Sobbing)

The court excused the jury from the courtroom, and defense counsel requested a mistrial. The trial court denied the motion, as well as defense counsel's motion to strike the witness's testimony in its entirety. The trial court reminded C. H. that she had been warned not to talk about the recent passing of her son. The jurors returned, and the trial court instructed them as follows: "Ladies and gentlemen, I earlier instructed you that certain testimony was being offered for a limited purpose, and you are reminded of that instruction. And you are to disregard the witness's testimony which preceded me sending you out." Defense counsel continued with his cross-examination, and C. H. answered the questions without further outburst.

(a) Harris argues that the trial court abused its discretion in denying his motion for mistrial after C. H.'s outburst.

14

"When determining whether the trial court abused its discretion [in denying a mistrial], we consider the statement itself, other evidence against the accused, and the actions of the trial court and counsel dealing with the impropriety."[16]

As an initial matter, Harris waived this objection by failing to renew his motion for mistrial after the trial court admonished C. H. outside the presence of the jury and instructed the jury to disregard the outburst.[17] Where the court gives a curative instruction and the defendant neither objects to the curative instruction nor renews his motion for mistrial, the issue is not preserved for appellate review.[18]

Even if Harris had preserved the issue, however, we find no abuse of discretion. Any error was self-induced, as it came during cross-examination, in response to defense counsel's questions about her children, and not during the State's case-in-chief. "Self-induced error cannot be complained of on appeal."[19] Furthermore, the trial court cautioned the witness and instructed the jury to disregard the

---

[16] *Jackson v. State*, 302 Ga. App. 412, 414 (1) (691 SE2d 553) (2010) (citations and punctuation omitted).

[17] See *Hartsfield v. State*, 294 Ga. 883, 886 (2) (757 SE2d 90) (2014).

[18] See *McCoy v. State*, 273 Ga. 568, 572 (8) (544 SE2d 709) (2001).

[19] *Phyfer v. State*, 259 Ga. App. 356, 361 (5) (b) (577 SE2d 56) (2003) (citations and punctuation omitted).

15

testimony,[20] and there was strong evidence of Harris's guilt.[21] Consequently, this argument lacks merit.

(b) Harris also contends that the trial court should have stricken C. H.'s entire testimony because she refused to answer defense counsel's questions, arguing that her outburst demonstrated that she had an "agenda" against him. Harris argues that he was denied the right to a "thorough and sifting cross-examination" guaranteed by the Sixth Amendment and OCGA § 24-6-611 (b).[22]

As discussed in Division 2 (a), supra, the trial court had discretion whether to grant a mistrial or give a curative instruction after the outburst.[23] Pretermitting whether Harris preserved his motion to strike C. H.'s entire testimony, the transcript shows that defense counsel continued his cross-examination after the jury returned

---

[20] See *Lowe v. State*, 287 Ga. 314, 316 (2) (a) (695 SE2d 623) (2010) ("[T]he Court must presume that the jury followed the trial court's instruction and disregarded the witness' statement.") (citation and punctuation omitted).

[21] See *Jackson*, 302 Ga. App. at 414 (1).

[22] OCGA § 24-6-611 (b) provides: "A witness may be cross-examined on any matter relevant to any issue in the proceeding. The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party."

[23] See *Jackson*, 302 Ga. App. at 414 (1).

16

to the courtroom and that C. H. answered his questions. We find no violation of Harris's constitutional or statutory right of confrontation.[24]

3. Harris argues that the trial court committed plain error by allowing the victims' 15-year-old brother to testify about the outcry made by the younger victim because the State failed to provide the notice required by the current Child Hearsay Statute, OCGA § 24-8-820.

As an initial matter, we note that OCGA § 24-8-820 does not apply in this case because Harris committed his crimes between February 1, 2010, and January 31, 2011, prior to the effective date of the statute.[25] Prior to the enactment of OCGA § 24-

---

[24] See *Soto v. State*, 285 Ga. 367, 368-369 (2) (677 SE2d 95) (2009) ("Generally, when a witness refuses to continue to testify after having already done so, the proper remedy is to strike pertinent portions of the witness' testimony. . . . When a witness declines to answer on cross examination certain pertinent questions relevant to a matter testified about by the witness on direct examination, all of the witness' testimony on the same *subject matter* should be stricken.") (citation and punctuation omitted; emphasis in original).

[25] See Ga. L. 2013, pp. 222, 243, § 21 ("Any offense occurring before July 1, 2013, shall be governed by the [Child Hearsay Statute] in effect at the time of such offense[.]"); *Laster v. State*, ___ Ga. App. ___, n. 2 (1) (___ SE2d ___) (2017) (Case No. A16A1801, decided Jan. 24, 2017) ("With the adoption of the new Evidence Code, effective January 1, 2013, OCGA § 24-3-16 was repealed and replaced with OCGA § 24-8-820, a nearly identical version of that statute. See Ga. L. 2011, p. 99 § 2. Six months later, OCGA § 24-8-820 was substantially revised. See Ga. L. 2013, p. 222 § 13 (effective July 1, 2013).").

17

8-820, however, the Supreme Court of Georgia interpreted the prior version of the Child Hearsay Statute, former OCGA § 24-3-16, "to require the prosecution to notify the defendant within a reasonable period of time prior to trial of its intent to use a child victim's hearsay statements and to give the defendant an opportunity to raise a Confrontation Clause objection."[26] "[T]he right of confrontation may, of course, be waived, including by failure to object to the offending evidence[.]"[27]

Harris does not dispute that he did not raise an objection in the trial court, nor does he challenge the reliability of the statement or raise the issue of confrontation. He argues, however, that the court committed plain error in allowing the brother's testimony when the State had not provided the required notice. We disagree.

"To show plain error, [Harris] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings."[28]

---

[26] *Hatley v. State*, 290 Ga. 480, 483-484 (I) (722 SE2d 67) (2012).

[27] Id. at 483 (I) (citation and punctuation omitted).

[28] *Mosley v. State*, 298 Ga. 849, 851 (2) (a) (785 SE2d 297) (2016) (citations and punctuation omitted).

Harris has not disputed the State's assertion that, in June 2012, it provided discovery to his counsel, including a witness list with the brother's name and police reports which referenced the victim's outcry. We conclude that the State substantially complied with the notice requirement of the Child Hearsay Statute, and that Harris has not demonstrated how his defense was harmed by the State's failure to provide a more complete notice.[29] Thus, there was no error.

4. Harris contends that the trial court erred in allowing the detective, over objection, to bolster the testimony of the older victim.

The detective testified that the older victim initially reported that Harris had touched her, but she later recanted. After being qualified as an expert in the field of forensic interviewing of children, the detective testified that it was not unusual to find out that a child had been abused, even though she had denied it.

The detective did not directly address the victim's credibility or express an opinion as to whether the child had actually been sexually abused. As such, the detective's testimony did not improperly bolster the credibility of the victim or

---

[29] See *Long v. State*, 324 Ga. App. 882, 891 (2) (a) (i) (752 SE2d 54) (2013) (regarding notice of State's intent to introduce evidence of a similar crime or transaction).

address the ultimate issue before the jury.[30] Consequently, this presents no reversible error.

5. Harris argues that the trial court committed reversible error by failing to conduct a *Jackson-Denno*[31] hearing to determine the voluntariness of his statement to police.

At the beginning of the trial, defense counsel acknowledged that he was not contesting the voluntariness of Harris's statement to police because he wanted the jury to hear that Harris denied committing the crimes at issue. A detective testified that, during his investigation, he conducted a videotaped three-hour interview of Harris, who denied he touched the victims. The detective testified that he had informed Harris of his *Miranda*[32] rights and that Harris had agreed to speak to him voluntarily. The prosecutor noted in the jury's presence: "Judge, . . . I believe the defense is not raising any issues regarding voluntariness or *Miranda*, so I'm not going to go any further with that." Defense counsel did not object to the detective's

---

[30] See *Pearce v. State*, 300 Ga. App. 777, 785 (6) (686 SE2d 392) (2009).

[31] See *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[32] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

testimony about the interview. Then, during cross-examination, defense counsel questioned the detective about Harris's interview.

Because Harris failed to pursue his initial request for a *Jackson-Denno* hearing, made as part of his 13-page consolidated motions packet; affirmatively stated that he was not challenging voluntariness and admissibility of the statement; and failed to object when the prosecutor asked the detective if Harris had spoken to him voluntarily after being advised of his *Miranda* rights or during the extensive subsequent questioning about the interview, he has waived this argument.[33]

In the alternative, Harris contends that his attorney's failure to request a *Jackson-Denno* hearing constituted ineffective assistance of counsel. Because Harris failed to raise this allegation in his motion for new trial, as amended by appellate counsel, it is waived.[34] After arguing at the motion for new trial hearing that a *Jackson-Denno* hearing should have been held, counsel stated, "And I'll also add to that that it was ineffective for the defense counsel to fail to request a Jackson Denno

---

[33] See *Richardson v. State*, 265 Ga. App. 880, 883 (2) (595 SE2d 678) (2004).

[34] See *Deleon-Alvarez v. State*, 324 Ga. App. 694, 707-708 (7) (751 SE2d 497) (2013).

hearing," This statement, without more, did not give the trial court an opportunity to rule on this ground.[35]

6. Harris contends that the evidence was insufficient to support his convictions based on the inconsistent testimony, the long period of time since some of the similar transactions occurred, the lack of any legal action taken on any of the similar transactions, the lack of DNA evidence as to the victims in this case, and in light of the character witnesses presented by the defense.

"[W]e do not reweigh the evidence or judge the credibility of witnesses, a job that rests squarely with the jury."[36] The testimony of the victims, which was corroborated by their brother and mother, the examining emergency room doctor, and the detective who interviewed them, was sufficient to authorize the jury to find that Harris had committed the acts claimed by them and to infer that he acted with the intent to arouse or satisfy his sexual desires.[37]

---

[35] See *Welch v. State*, 307 Ga. App. 857, 859-860 (2) (705 SE2d 916) (2011).

[36] *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (citations omitted).

[37] See OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]"); *Malone v. State*, 277

7. Harris argues that the trial court erred in giving, over objection, two jury instructions requested by the State, which Harris contends were unclear, confusing, and not pattern instructions.

The first charge at issue instructed the jury:

A defendant need not have intended to actually use the child's body in some physical capacity in order to commit an act of molestation. It is sufficient if a person utilizes or capitalizes on a child's mere presence as a witness to the person's intentional immoral or indecent act, provided that the act is accomplished with the intent to arouse or satisfy the sexual desires of the person.

The second complained-of charge instructed the jury: "In the case of a child, consent is irrelevant. Issues of a child's alleged consent, or a defendant's use of physical or emotional force, or lack thereof, are not to be considered by the jury, because a child under the age of sixteen years cannot legally consent to sexual acts."

---

Ga. App. 694, 696 (1) (627 SE2d 378) (2006) ("The testimony of the child molestation victim alone was sufficient to authorize the jury to find that [the defendant committed the acts claimed by her and to infer that he acted with the intent to arouse or satisfy his and her sexual desires.").

23

Because Harris has not cited any authority to support this claim of error, this argument could be deemed abandoned.[38] However, even if we reach this claim, Harris's argument lacks merit. Although the charges are not Pattern Jury Instructions,[39] they were accurate statements of the law[40] and were not confusing or misleading.[41] We find no error.

8. Harris also complains that the trial court erred by not merging certain counts for sentencing and in imposing a cruel and unusual sentence.

The trial court sentenced Harris to twenty years' imprisonment on Count 1; twenty years' imprisonment on Count 3 (concurrent with Count 1); twenty years to

---

[38] See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[39] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2007), §§ 2.30.12 (Rape; Victim 10 Years of Age or Older but Under the Age of 16), 2.34.10 (Child Molestation; After 7/1/95).

[40] See *Forbes v. State*, 284 Ga. App. 520, 523 (2) (644 SE2d 345) (2007) (considering the well-established body of law that an underage victim can not consent to intercourse, the trial court did not err in instructing the jury that a victim younger than 16 was legally incapable of consenting to intercourse); *Grimsley v. State*, 233 Ga. App. 781, 784-785 (1) (505 SE2d 522) (1998) (evidence was sufficient to support child molestation conviction where the defendant intentionally engaged in sexual activity with his wife in front of their underage children).

[41] See *Johnson v. State*, 198 Ga. App. 520, 521 (7) (402 SE2d 115) (1991).

serve ten on Count 5 (consecutive to Count 1); and twenty years to serve ten on each of Counts 6 through 8; (each concurrent with Count 1), for a total of forty years, to serve thirty, with the remainder on probation.

(a) Harris complains that he received a sentence after trial significantly greater than what the State had offered before trial in exchange for his guilty plea (fifteen years to serve five) and that his sentence (forty years to serve thirty) thus constitutes cruel and unusual punishment.

This argument is without merit. "[I]t is not error for a trial judge to impose a greater sentence upon a defendant after he has heard the evidence at trial than he might have imposed in conjunction with a guilty plea."[42]

(b) Harris also contends that the trial court erred by not merging certain counts for sentencing. Because Harris has not cited any authority to support this claim of error, this argument is deemed abandoned pursuant to Court of Appeals Rule 25 (c) (2).[43]

*Judgment affirmed. Miller, P. J., and Dillard, P. J., concur.*

---

[42] *Hawes v. State*, 298 Ga. App. 461-462 (1) (680 SE2d 513) (2009) (footnote omitted).

[43] See *Patterson v. State*, 327 Ga. App. 695, 698 (3) (761 SE2d 101) (2014).