**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**April 28, 2023**

# In the Court of Appeals of Georgia

A23A0395. BODY v. THE STATE.

MCFADDEN, Presiding Judge.

A jury found Jamal Body guilty of robbery by intimidation for taking items from Jamil Stevens during a fight that Body initiated. Body appeals from his conviction, arguing that the trial court erred in denying his motions for mistrial after a police officer testified in a way that violated the trial court's instructions and placed Body's character into issue. We find no abuse of discretion in the trial court's ruling, so we affirm.

1. *Facts and procedural history.*

Body does not challenge the sufficiency of the evidence, so we do not consider it. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020). "But a

review of the evidence here is relevant to [Body's] enumeration[ ] of error." *Redding v. State*, 311 Ga. 757 (1) n. 2 (858 SE2d 469) (2021).

The evidence at trial showed that on the night of June 6, 2015, Stevens was standing in front of the house of his friend, David Jennings, when Body approached with some other men. The two men exchanged words, Body knocked Stevens's hat off of his head, and then Body began to punch and kick Stevens, knocking him to the ground. Stevens testified that he did not "fight" Body but merely acted to protect himself against Body's assault, but eyewitnesses to this incident described it as a "fight" in which Stevens participated, and for convenience we will refer to this incident in that way.

During the course of the fight, Stevens saw two of the other men drive away in Stevens's car. Although he told police that at some point he also heard gunshots, Stevens testified that he did not see Body or any of the other men with a gun. Stevens got to his feet and fled. Body chased Stevens and grabbed his phone from him as Stevens was dialing 911. Stevens then ran to an adjacent street and found someone to call 911 for him.

Stevens testified that Body pulled some necklaces off of him during the fight, but that he immediately was able to take them back from Body. Stevens also testified

2

that after the fight his wallet, with cash inside, was missing. He testified that Body had taken the wallet from his back pocket during the fight, but there was other evidence that Stevens had left the wallet in his car. Several eyewitnesses to the fight testified that they did not see Body take anything from Stevens. His car was found abandoned with several items missing from it. His wallet was not in the car when it was recovered.

The state charged Body and a co-defendant with armed robbery and hijacking a motor vehicle. The trial court granted a directed verdict to the co-defendant at the end of the state's case-in-chief, and only two lesser-included charges against Body were ultimately presented to the jury: robbery by intimidation as a lesser-included offense of armed robbery, based on the taking of Stevens's jewelry, wallet, and money; and theft by taking as a lesser-included offense of hijacking a motor vehicle, based on the taking of his car. The jury found Body guilty of robbery by intimidation and acquitted him of theft by taking.

2. *Body's motions for mistrial.*

The sole error enumerated by Body on appeal is the trial court's denial of his motions for mistrial after a police officer testified in a way that implicated Body's character and arguably violated prior rulings by the trial court. Our review of this

issue requires us to look closely at the circumstances before and during trial that led up to that testimony and those rulings.

Before trial, concerns arose about the fact that Jennings (Stevens's friend, in front of whose house the fight occurred) was unavailable to testify. Jennings had given a statement to police during their investigation, but the state was not able to secure his presence at trial, even though the trial court had issued a warrant for his arrest as a material witness.

Counsel for Body and his co-defendant feared that the state would elicit testimony from other witnesses suggesting that Jennings was not present because he was afraid of the two defendants, thereby implicating their characters. Body's counsel moved in limine to exclude any testimony that Jennings had been interviewed by the police, in order to prevent officers from suggesting in their testimony that Jennings was scared. He argued that "[t]here is absolutely no reason for [the state] to bring in that evidence other than to try to make it look like [the defendants] got rid of that witness or intimidated him in some way."

The trial court provisionally denied the motion in limine but held that Body's counsel could renew it during trial, stating: "I want to hear how the evidence develops before I rule with finality on that issue." The trial court also stated that he "tend[ed]

4

to agree" with the arguments made by Body's counsel, explaining: "I can think of very few instances where this would be clearly in bounds, you know, where it would clearly be more appropriate for Mr. Jennings's demeanor to be put at issue or questioned about than any other witnesses."

At trial, during direct examination, the lead police investigator testified that he interviewed Jennings. When asked when his initial meeting with Jennings took place, that officer gave a long, narrative answer that included the type of statements Body's counsel had sought to avoid:

> I was able to get ahold of Mr. Jennings . . . but he was very reluctant to speak with me, did not want to become involved. He seemed like there was definitely something to hide or definitely afraid or scared of Mr. Body and [the co-defendant]. However I was able to get an interview with Mr. Jennings. I got him to agree to meet me outside of his work because he didn't want anybody to see him getting or talking to the police at his place of employment.

Co-defendant's counsel objected and Body's counsel asked for a bench conference, at which he argued that the officer's testimony violated the trial court's pre-trial ruling.[1] The trial court stated that he had "specifically ruled that [the witness] could

---

[1] The court reporter could not hear everything that was said at this bench conference. Excerpts of the bench conference are quoted as they appear in the

not testify to what the (inaudible) was a witness appeared to be afraid or frightened."

When the prosecutor said that he did not recall that ruling, the trial court replied, "All right. Well, that was — that was my intent, is that he could not testify." The trial court further explained:

> I don't want the witness testifying to anything about a demeanor or surmising or speculating about the motives of the witnesses. I mean, he can testify to the statements that I think that if a witness said it's not hearsay, if a witness said I don't want to be seen at work talking to you, I think that's fair game but just someone seemed fearful or looked like they were afraid of these two, I don't want that testimony coming from this witness or any other witness.

In response to the prosecutor's request for clarification, the trial court stated that the officer "cannot testify that . . . these witnesses looked like they were afraid of [the co-defendant] or Mr. Body." The trial court also stated:

> I recall ruling and I'm ruling again, that I do not want any motive (inaudible) to Mr. Jennings or his cooperation or lack of cooperation. I mean, the way I would see it is you would — this witness talked to Mr. Jennings, here is where the interview took place, here is when it took place, here is the steps he took to set it up, maybe even what he did in

transcript, including places in which statements by the trial court or counsel were "inaudible."

6

response to the interview, what was the next investigative step. . . . I've already ruled on this[.]

At that point, Body's counsel moved for a mistrial, which the trial court denied. Counsel and the trial court then discussed the phrasing of a curative instruction, ultimately settling on the following instruction that the trial court gave to the jury: "Ladies and gentlemen, you are to disregard any statement from one witness about the presence or absence at trial of any other witness." Body's counsel did not object to the language of this curative instruction or renew his motion for mistrial at that time.

During the course of the discussion about the curative instruction, the prosecutor continued to press the trial court about the scope of the trial court's ruling limiting the police officer's testimony, and the following exchange occurred:

[PROSECUTOR]: So (inaudible) talk about demeanor.

COURT: No, he can't.

. . .

[PROSECUTOR]: Is that your ruling, Judge? Just to make sure because I need to tell [the officer].

7

COURT: I think either already testified to it and I think the horse is out of the barn on it, but I did not want him specifically testifying that. . . . (Inaudible) like they looked they were fearful of [the co-defendant] or they looked like they were fearful of Mr. Body. . . .

[PROSECUTOR]: He can just generally say he seem[ed] nervous to talk to me.

COURT: I think that he appeared nervous, I think that would be fair but attributing the — by connecting the dots with one of these two defendants there is no way he can possibly do that. He can't know that.

[PROSECUTOR]: Absolutely. And I agree I was not that (inaudible) my intent.

COURT: Well, he said it once and I don't want him to say it again.

Outside the jury's presence, the prosecutor instructed the officer that he could testify to his general observations of Jennings's demeanor, such as that Jennings appeared nervous, but he could not "assign any motive or any reason why you think [Jennings] felt that way." When asked by the trial court if he wanted to add anything to that instruction, Body's counsel replied that he did not.

Resuming direct examination, the prosecutor asked the officer about his general observations of Jennings's behavior. The officer responded:

> When I spoke to Mr. Jennings on the phone he was very nervous, very evasive. I couldn't get him to commit to come down to the Police Department to give me a statement. I couldn't get him to commit to meeting me at his place of work to give me a statement, he just refused both of those. I finally got him to agree to meet me after he got off work away from his place of employment[.]

The officer stated that when he went to the designated meeting place, Jennings initially walked away from him. The officer testified:

> Now, my immediate question to myself was, was he trying to evade me or was he just trying to be c[o]vert and didn't want anybody to see him, that I do not know. As soon as I stopped he got in the car, he slouched way down in the seat so nobody could see him. And then from there we drove and I told him we were going to go to the Public Safety Building so I could get the statement. He did not want to go to the Public Safety Building.

Body's counsel then objected and, outside the jury's presence, moved again for a mistrial, stating that the officer "did exactly what we wanted him not to do and that was state 'because he did not want anyone to see him.'" The trial court replied, "Yeah." The prosecutor denied that the officer was "trying to draw any characterization about the defendants in particular," suggested that he may not have

9

given a clear instruction to the officer, and argued that, in any event, there was no need for a mistrial.

The trial court denied the second motion for mistrial and ordered the jury to be reseated. No one requested a curative instruction and the trial court did not give one. At that point, the prosecutor began a new line of questioning that did not concern Jennings.

In his motion for new trial, Body argued that the trial court erred in not declaring a mistrial because the officer's testimony amounted to improper character evidence and was given in violation of the trial court's prior rulings. The trial court denied the motion.

In his appellate brief, Body enumerates as error the trial court's denial of his motions for mistrial "after [the officer] testified David Jennings 'seemed . . . definitely scared of' Body, and persisted in ascribing the motive, 'he . . . didn't want anybody to see him,' in describing Jennings' behavior."

3. *Analysis.*

Body argues that he was entitled to a mistrial because he was unfairly prejudiced by the officer's testimony that Jennings was scared of Body and did not want anybody to see him meeting with law enforcement. "The refusal to grant a

10

mistrial based on a prejudicial comment lies within the discretion of the trial court, and [we] will not interfere with that discretion on appeal in the absence of manifest abuse." *Golden v. State*, 310 Ga. 538, 546 (4) (852 SE2d 524) (2020) (citation and punctuation omitted). "Trial courts are vested with great discretion to grant or deny mistrials because they are in the best possible position to determine whether one is warranted." *Allen v. State*, __ Ga. __, __ (4) (c) (Case No. S22A0962, decided Feb. 7, 2023) (citation and punctuation omitted).

In reviewing a trial court's exercise of discretion in denying a motion for mistrial based on the improper admission of bad character evidence, we consider "the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety." *Thrift v. State*, 310 Ga. 499, 503 (3) (852 SE2d 560) (2020) (citation and punctuation omitted). "We also consider additional facts like whether the reference to the improper character evidence is isolated and brief, whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was deliberately elicited by the [s]tate." *Smallwood v. State*, 334 Ga. App. 224, 225-226 (1) (779 SE2d 1) (2015) (citation and punctuation omitted). We will not disturb a trial court's exercise of discretion in denying a motion for mistrial "unless a mistrial

is essential to preserve the defendant's right to a fair trial." *Allen*, __ Ga. at __ (4) (c) (citation and punctuation omitted). Accord *Swims v. State*, 307 Ga. 651, 654-655 (2) (838 SE2d 751) (2020).

With these considerations in mind, we find no abuse of discretion by the trial court. Arguably the officer's testimony, which suggested that Jennings was afraid of Body, put Body's character into evidence. See *Cannon v. State*, 288 Ga. 225, 228 (4) (702 SE2d 845) (2010). But our Supreme Court has held that "a nonresponsive answer that impacts negatively on a defendant's character does not improperly place his character in issue." *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007) (citation and punctuation omitted). See *Hansley v. State*, 267 Ga. 48, 49 (3) (472 SE2d 305) (1996) (relying on the principle that a nonresponsive answer does not improperly place a defendant's character in issue to hold that the trial court did not err in denying motion for mistrial after witness gave nonresponsive testimony that he had seen the defendant pull a gun on another person). The testimony at issue in this case was not responsive to the prosecutor's questions and, as to the testimony about Jennings "slouch[ing] way down in the seat so nobody could see him," directly disregarded the prosecutor's instructions not to assign a motive to Jennings.

Even if we view the officer's testimony to improperly place Body's character into evidence, the mere fact that a witness testifies to being afraid of a defendant does not require a mistrial in every case. There are many instances where Georgia appellate courts have found no abuse of discretion in a trial court's decision to deny a motion for mistrial after a witness testified to being afraid of the defendant. See, e. g., *Kemp v. State*, 303 Ga. 385, 397 (2) (d) (810 SE2d 515) (2018) (trial court did not abuse discretion in denying motion for mistrial after a witness implied in his testimony that the defendants had the ability to have others kill him and that he was courageous to testify in the face of death threats); *Rafi v. State*, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011) (trial court did not abuse discretion in denying motion for mistrial after eyewitness testified, in contravention of earlier trial court ruling, that he was not completely forthcoming with police because people who "snitch on a dope guy [are] going to be killed"); *Ivester v. State*, 252 Ga. 333, 336 (3) (313 SE2d 674) (1984) (trial court did not err in refusing to grant a mistrial after a police officer testified that a witness to the incident was scared to testify); *Bowen v. State*, 304 Ga. App. 819, 823-824 (2) (697 SE2d 898) (2010) (trial court did not err in denying motion for mistrial after a witness testified that the defendant had escaped from jail before and that she was afraid he would come to her house and hurt her and her family).

13

Moreover, the officer's statements in this case were not extensive. The officer only once directly stated that Jennings was afraid of Body, and after defense counsel objected to that statement, the trial court gave the jury a curative instruction. Although the language of that instruction did not directly refer to the testimony that Jennings was afraid of Body, Body's counsel approved that language and did not object to the action taken by the trial court. See *Graves v. State*, 298 Ga. 551, 555 (3) (783 SE2d 891) (2016) (defendant waived argument that trial court erred in denying motion for mistrial by failing to object to trial court's corrective action or renew motion after action was taken). The officer's later testimony suggesting that Jennings did not want to be seen with law enforcement did not specifically mention Body. Body's counsel did not ask for any further action by the trial court after the trial court denied the second motion for mistrial, and the prosecutor immediately moved onto other topics.

Finally, although we agree with Body that this case did not involve overwhelming evidence of Body's guilt, that does not require us to reverse. The jury found Body guilty of a single offense, robbery by intimidation, which occurs when, with the intent to commit theft, a person takes property from another "[b]y intimidation, by the use of threat or coercion, or by placing such person in fear of

immediate serious bodily injury to himself[.]" OCGA § 16-8-40 (a) (2). And as detailed above, the evidence was mixed as to whether Body took anything from Stevens. The state only charged Body with taking Stevens's necklaces and his wallet containing cash, but Stevens immediately recovered the necklaces and there was some evidence that he had left his wallet in his car, notwithstanding his testimony to the contrary.

But the fact that Jennings was afraid of Body has nothing to do with whether Body took anything from Stevens. Jennings was not a trial witness and his credibility was not at issue. And the evidence *did* overwhelmingly show that Body was engaged in the fight with Stevens. Simply put, any prejudicial impact from the officer's testimony was not strong, which distinguishes this case from decisions cited by Body. See, e. g., *Coleman v. State*, 308 Ga. App. 731, 735-736 (2) (708 SE2d 638) (2011) (physical precedent only) (reversing the trial court's refusal to grant a mistrial after a witness improperly testified that the defendants' child had been placed in foster care, because that statement created the impression that the defendants had committed the charged offense, cruelty to children); *Jackson v. State*, 302 Ga. App. 412, 417 (1) (691 SE2d 553) (2010) (focusing on the strong prejudicial impact of an improper reference to the defendant's incarceration in reversing the trial court's denial of a

15

motion for mistrial), overruled in part on other grounds by *State v. Lane*, 308 Ga. 10, 24 (838 SE2d 808) (2020).

For these reasons, Body has not shown that "a mistrial is essential to preserve [his] right to a fair trial." *Allen*, __ Ga. at __ (4) (c). So we will not disturb the trial court's exercise of discretion in denying his motion for mistrial. See id.

*Judgment affirmed. Brown and Markle, JJ., concur*.