## A06A1893. FORBES v. THE STATE.
### (644 SE2d 345)

BARNES, Chief Judge.

Michael Forbes appeals his convictions for rape, incest, child molestation, aggravated child molestation, and aggravated sodomy, contending that insufficient evidence supports three of the convictions. He also claims that the trial court's jury charge on consent was unconstitutional, and that the aggravated child molestation and aggravated sodomy convictions merge as a matter of law. For the reasons that follow, we affirm the trial court's denial of Forbes' motion for new trial.

1. We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that Forbes moved from Jamaica to DeKalb County with his son, R. F., and his daughter, K. F., in 2000. R. F. was six and K. F. was thirteen. After a few months, the children moved to New York for about a year to live with their grandmother, then returned to DeKalb County in 2001. On October 6, 2004, R. F.'s teacher called Forbes to report that he had been in trouble at school for playing a game. Forbes questioned R. F. about the incident and began hitting him with a belt on his legs and chest, then slapping and kicking him in the stomach. R. F. got away and ran next door to call 911, where he reported that his dad was "going crazy" giving him a whipping.

Forbes went into K. F.'s room and began kicking her and hitting her with his fists and a belt. He told her to go get her brother, and K. F. went next door. Both children were crying, and R. F. had no shirt on and had red welts on his back. K. F. said her father beat her because she was five or ten minutes late returning from school. R. F. told the neighbor about "the sexual thing" between his father and sister, and

the sister confirmed it. The police came and talked to the children and Forbes. One of the officers noticed red welts on R. F.'s body so he called a detective to the scene, who thought that the marks appeared to be consistent with normal corporal punishment and decided to return the children to Forbes and notify the Department of Family and Children Services (DFCS) for an investigation.

As the detective got into his car to leave, the children came running out asking him not to leave. They were frightened and very excited, and K. F. told the detective that her father had been having sex with her. R. F. said yes, he had seen it happen. The other officer interviewed the neighbor, and the detective informed Forbes that he was taking them from his custody and putting them in DFCS custody due to the physical abuse allegations. He took them to the DeKalb County Youth and Sex Crimes office and had a female detective interview K. F., who gave a statement.

R. F. saw his father in bed on top of his sister at least ten times, in Jamaica and in their house on Linecrest Avenue. She would be crying and Forbes would be moving around. He never told anyone because he did not want his sister to get hurt. Whenever R. F. got into trouble, Forbes would kick or punch him in the stomach, push him into walls, or whip him with a belt. He called the police the day he and his sister ran to the neighbor's in October 2004 because he "got tired of [Forbes] hitting me."

K. F. testified that her father had been sexually molesting her "almost every night" from the time she was 13 until she was 16, when she made the outcry to the detective. When they lived on Mahonia Place in DeKalb County in 2002, Forbes would have sex with her and put his penis into her vagina, more than once. In 2003 they moved to Ansley Oaks, also in DeKalb County, where her father made her come into his room, grabbed her hands, and again put his penis into her vagina. This happened more than once. He also put his finger in her vagina, and his mouth on her breasts and vagina. In summer 2004, they moved to a house on Linecrest in DeKalb County. Forbes came to her room almost every night and would either get on her bed or make her come to his room and put his penis in her vagina. She finally told the police when R. F. called them to come to the house because she "didn't want to go through it anymore."

The trial court admitted pictures of R. F. showing multiple bruises, and of K. F. showing bruises on her legs, taken the day they left with the police. A physician testified that K. F. had bruises on her upper arm and thigh, consistent with being hit by a belt, fists, or feet.

A woman who had been dating Forbes was present when he began to discipline R. F. for getting into trouble in school. At first Forbes was calm but his actions escalated and he began hitting his son with a belt while R. F. repeated, "OK, daddy, OK, I'm sorry."

Forbes ripped off his shirt and R. F. got away from him. Forbes began to calm down until he went into K. F.'s room and began chastising her for being home late from school. The witness asked him to calm down because he seemed out of control and he asked her to leave. As she was driving away, she began to worry that Forbes' interaction with K. F. would escalate and she returned. The police were present by that time, and she counseled Forbes to calm down because he really did not want DFCS involved. K. F. was mumbling that something more was going on there and then admitted that it involved inappropriate touching. The witness would have contacted the police but the children made an outcry to them first.

Forbes contends that insufficient evidence supports his convictions for child molestation and aggravated child molestation because the State failed to prove that the events specified in the indictment, placing his hand and mouth on K. F.'s vagina, took place before she turned 16 on April 2, 2003. He also asserts that the State failed to prove venue on those two counts as well as the aggravated sodomy count. We find no merit to these contentions. K. F. testified that Forbes placed his hand and mouth on her vagina while they lived on Mahonia Place in DeKalb County, which was in 2002, which was before she turned 16. The aggravated sodomy count alleged that Forbes placed his mouth on K. F.'s vagina some time between April 2, 2003 and October 2, 2004, and she specifically testified that when Forbes put his mouth on her vagina such events took place from the time she was 13 until she was 16. Between summer 2004 and October 2004, the family lived in DeKalb County.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Forbes guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Forbes contends that the trial court erred by instructing the jury that lack of consent was conclusively presumed as to some counts if the victim was under the age of 16.[1] He contends that such a mandatory presumption in the rape and aggravated sodomy charges against K. F. while she was under the age of 16 is unconstitutionally burden shifting. He concedes, however, that the Supreme Court of Georgia has repeatedly approved the presumption he challenges, but argues that no appellate court has addressed this particular constitutional attack.

In *State v. Collins*, 270 Ga. 42, 43 (508 SE2d 390) (1998), the court held that "[t]he fact that a victim is under the age of consent may

---

[1] The trial court also charged the jury that if the alleged victim was 16 or older, lack of consent was an essential element which the State had to prove beyond a reasonable doubt.

supply the 'against her will' element in a forcible rape case since it shows that the victim is incapable of giving legal consent" (holding that fact that victim is underage does not establish element of force). Most of the recent case law parsing the elements of rape is directed toward the requirement that the State prove force, and takes for granted that a victim under the age of consent cannot, as a matter of law, consent to intercourse. See, e.g., id.; *Taylor v. State*, 264 Ga. App. 665, 669 (4) (592 SE2d 148) (2003); *Pollard v. State*, 260 Ga. App. 540, 542-543 (3) (580 SE2d 337) (2003); *State v. Lyons*, 256 Ga. App. 377 (568 SE2d 533) (2002).

Our courts long ago found meritless the argument that an underage victim can consent to intercourse. Affirming a jury charge 150 years ago that the underage victim could not consent to sexual intercourse, the Supreme Court of Georgia held that

> the rule at common law is well established, and we think founded in wisdom: See 4 Blackstone, (Cooley) 210, 212. It has also, in effect, received the sanction of this court: *Stephen v. The State*, 11 Georgia Reports, [225,] 238. We shall not disturb it. That rule is, that her tender years concludes the question — she cannot consent.

*Gosha v. State*, 56 Ga. 36 (1876). The Georgia legislature raised the age of consent from ten to fourteen in 1918 (*Houston v. State*, 186 Ga. 141, 143 (197 SE 118) (1938)), and from fourteen to sixteen years in 1995 (*State v. Collins*, supra, 270 Ga. at 49, n. 31 (Hunstein, Justice, dissenting)). Considering this well-established body of law, the trial court did not err in its jury charge directing the jury that a victim younger than 16 is legally incapable of consenting to intercourse.

3. Forbes contends that his convictions on Counts 5 and 6 merge because they both allege the same act — mouth on the vagina — and because the different dates alleged were not material dates. He argues that, because the exact dates of the crimes were not material allegations of the indictment, the State could prove that the crime was committed at any time within the statute of limitation, and thus the two crimes merged. See *Edgehill v. State*, 253 Ga. 343, 345 (3) (320 SE2d 176) (1984). Count 5 alleged that Forbes committed aggravated child molestation between January 1, 2002 and April 1, 2003 by placing his mouth on the vagina of the victim, a child under 16. Count 6 alleged that he committed aggravated sodomy between April 2, 2003 and October 2, 2004, by placing his mouth on the vagina of the victim.

> Under OCGA § 16-1-6 (1), two offenses will merge as a matter of fact if one of them is established by proof of the

same or less than all the facts required to prove the other. As with any factual merger question, the dispositive issue is whether the State "used up" its evidence in proving the crime: The actual evidence test, in effect, means that if the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6 (1).

(Citation and punctuation omitted.) *Leaptrot v. State*, 272 Ga. App. 587, 600-601 (4) (612 SE2d 887) (2005). "This court has held that when the two offenses are separate legal offenses, they do not merge as a matter of law. And because the victim reported at least two separate acts of sexual intercourse, it cannot be said that the convictions were based on the same conduct. Consequently, the convictions did not merge as a matter of fact either." (Citation and punctuation omitted.) *James v. State*, 268 Ga. App. 851, 854 (2) (602 SE2d 854) (2004). In this case, as discussed in Division 1, the record contains sufficient evidence of multiple acts committed against the victim for a rational trier of fact to find Forbes guilty beyond a reasonable doubt of both crimes charged, and the evidence supporting one count was not "used up" in proving the other count. See *Keown v. State*, 275 Ga. App. 166, 170 (2) (620 SE2d 428) (2005); *Gable v. State*, 222 Ga. App. 768, 770 (1) (476 SE2d 66) (1996).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 27, 2007.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.