**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 6, 2022**

# In the Court of Appeals of Georgia

A22A0940. WRIGHT v. THE STATE.

MILLER, Presiding Judge.

Norvee-Arthur Daniel Wright appeals after a Gwinnett County jury found him guilty of rape and incest. On appeal, he argues that (1) the trial court erred when it charged the jury as to general intent, the amount of force needed to effectuate rape, and the definitions of penetration and lack of consent; and (2) the evidence was insufficient to support his convictions. Upon a close review of the record and the relevant law, we determine that the trial court did not commit reversible error when it charged the jury, and the evidence was sufficient to support Wright's convictions, so we affirm.

Viewed in the light most favorable to the jury's verdicts,[1] the evidence adduced at trial showed that Wright is the father of D. W., who was born in July 2000. D. W. testified that, one night in February 2016, Wright "tried to penetrate inside of [her] while [she] was asleep." According to D. W., Wright did "not fully" have sex with her, and his penis did not go "inside of" her, but she felt it. D. W. stated that she awoke during the incident but was "frozen" and "scared" because Wright was "bigger than [her]" and because "[h]e's [her] dad." D. W. also testified that Wright did this "many" times over the previous six months.

The next day, D. W. was speaking to her high school track coach, who noticed that "something was bothering her." D. W. told her coach that she was having problems with her dad, and when the coach asked her if her father was physically abusing her, she replied, "No, the other way." The coach referred D. W. to the school counselor, who then contacted the police. Law enforcement conducted a search of Wright's house and found seminal fluid on D. W.'s panties and a blanket. A nurse conducted a sexual assault exam on D. W., which involved swabbing "in the posterior portion of the vaginal canal." The forensic examiner found a "very large amount" of male DNA and sperm cells in D. W.'s vagina which matched Wright's DNA.

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

A grand jury indicted Wright on two counts of rape (OCGA § 16-6-1) and two counts of incest (OCGA § 16-6-22) stemming from the 2016 incident and another incident that allegedly occurred in December 2014. At trial, the jury found Wright guilty of the counts of rape and incest arising from the 2016 incident but acquitted him of the counts arising from the 2014 incident. The trial court sentenced Wright to a total of life plus 29 years' imprisonment and one year of probation. Wright filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. In four enumerations of error, Wright challenges the trial court's instructions to the jury on various legal points and definitions. Wright specifically challenges the instructions pertaining to general criminal intent, the amount of force needed to effectuate rape, the definition of penetration, and what constitutes lack of consent. After considering all four challenges, we ultimately conclude that the trial court did not commit reversible error when it instructed the jury.

"We review de novo an allegedly erroneous jury instruction, which is a legal question." (Citation omitted.) *Johnson v. State*, 323 Ga. App. 65, 68 (2) (744 SE2d 921) (2013). "In assessing an assertion of an erroneous jury instruction, . . . the instruction must be evaluated in the context of the trial court's jury instructions as a

3

whole. The only requirement regarding jury charges is that the charges, as given, were correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence." (Citations and punctuation omitted.) *Pye v. State*, 322 Ga. App. 125, 129 (2) (742 SE2d 770) (2013). Still, "instructions to the jury must be tailored to fit the charge in the indictment and the evidence admitted at trial[.]" *Williams v. State*, 309 Ga. App. 688, 691 (2) (710 SE2d 884) (2011). Additionally, "an erroneous charge does not warrant a reversal unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered." (Citation omitted.) *Mubarak v. State*, 305 Ga. App. 419, 421 (2) (699 SE2d 788) (2010).

(a) Wright first argues that the trial court erred when it charged the jury as to general criminal intent when he was charged with specific intent crimes.[2] In Wright's view, the charge on general intent was erroneous, misled the jury, and potentially resulted in convictions based on a lower intent than is required by the relevant statutes. Because we conclude that the crimes of forcible rape and incest are general intent crimes, we reject this enumeration of error.

---

[2] On this point, the trial court instructed the jury that "[c]riminal intent does not mean an intention to violate the law or to violate a penal statute but means simply the intention to commit the act that is prohibited by a statute." This is a correct statement of general criminal intent. *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012).

4

Georgia law defines a "crime" as "a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence." OCGA § 16-2-1. Therefore, "criminal intent is an essential element of every crime where criminal negligence is not involved." (Citation omitted.) *Matos-Bautista v. State*, 353 Ga. App. 773, 777 (1) (839 SE2d 260) (2020). Criminal intent, however, "does not always equate to mental fault, guilty knowledge, or purposeful violation of the law[,]" *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012), and "criminal intent does not always require specific intent." *Downey v. State*, 298 Ga. 568, 569 (1) (783 SE2d 622) (2016). A crime may instead only require that the State prove "general criminal intent, which is simply the intent to do the act which results in the violation of the law, and not the intent to commit the crime itself." (Citations, punctuation, and emphasis omitted.) *Ogilvie*, supra, 292 Ga. at 8 (2) (a). Nevertheless, "some crimes require an additional showing of specific intent." *Tam v. State*, 232 Ga. App. 15 (1) (501 SE2d 51) (1998). Our case law generally requires that, for a crime to be considered a specific intent crime, the statute must "contain plain language providing that specific intent to violate the law" because "it [is] a matter for the General Assembly to phrase a statute to include such a specific intent

requirement." (Citation omitted.) *Evans v. State*, 360 Ga. App. 596, 616 (18) (859 SE2d 593) (2021).

Here, Wright was convicted of forcible rape under OCGA §16-6-1 (a) (1) and incest under OCGA § 16-6-22 (a) (1). OCGA § 16-6-1 (a) (1) provides that "[a] person commits the offense of rape when he has carnal knowledge of [a] female forcibly and against her will[.]" Under OCGA § 16-6-22 (a) (1), "[a] person commits the offense of incest when such person engages in sexual intercourse or sodomy . . . with a person whom he or she knows he or she is related to either by blood or by marriage as follows: Father and child or stepchild[.]" Neither statute contains any particular provisions defining any specific intent required by the perpetrator, nor do they specify that any particular result must be intended to come about as a result of the criminalized acts. These statutes instead only require proof that the offender engaged in the acts specified. We must therefore conclude that only a general criminal intent is required under each statute. See *Evans*, supra, 360 Ga. App. at 616 (18) (the crime of conspiracy to commit a RICO violation under OCGA § 16-14-4 is not a specific intent crime because "the statute does not contain plain language providing that specific intent to violate the law is an element of a RICO conspiracy"); *Patterson v. State*, 299 Ga. 491, 493-496 (789 SE2d 175) (2016) (concluding that the crime of

6

simple assault under OCGA § 16-5-20 (a) (2) was not a specific intent crime because the statute did not contain any requirement that the defendant act with the specific intent to place the victim in reasonable apprehension of receiving a violent injury); *Myers v. State*, 302 Ga. App. 753, 756 (2) n.11 (691 SE2d 650) (2010) (noting that DUI is a general intent crime because "[t]he state does not have to prove that the defendant intended to drive under the influence, only that the defendant was in an intoxicated condition and that she intended to drive.") (citation omitted). See also *People v. Langworthy*, 416 Mich. 630, 643-644 (B) & n.21 (331 NW2d 171) (1982) (noting "the overwhelming weight of authority which holds that rape is a general-intent crime").

Because rape and incest are general intent crimes, the trial court correctly denied Wright's request that the jury be instructed on specific intent.

(b) Wright next argues that the trial court erred when it charged the jury as to the element of force needed to effectuate forcible rape, arguing that the trial court's instructions were superfluous and not tailored to the specific facts of this case. We discern no error.

The trial court instructed the jury that "[t]he State need not show that a victim was physically injured to prove rape. Lack of resistance, induced by fear, is force, and

7

may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him. Force may also be inferred by evidence of intimidation arising from a familial relationship." In this case, D. W. testified that she was "frozen" and "scared" during the incident because Wright was "bigger than [her]" and because "[h]e's [her] dad." Thus, this jury charge was indeed tailored to the facts of this case. Moreover, Wright has not shown that the jury was confused by this additional instruction because it set out a correct statement of the law regarding force in rape cases. *Frady v. State*, 359 Ga. App. 255, 258-259 (4) (857 SE2d 260) (2021); *Williams v. State*, 304 Ga. App. 592, 593-594 (1) (696 SE2d 512) (2010).[3] Thus, we conclude that Wright has not shown that the trial court erred in instructing the jury on the element of force. See *Shadron v. State*, 275 Ga. 767, 769-770 (3) (573 SE2d 73) (2002) (trial court's unnecessary and superfluous jury instructions regarding the grand jury process were not a basis for reversal when defendant failed to show prejudice).

---

[3] We note that our caselaw has expressed doubt that a jury instruction on force based on intimidation from a familial relationship is appropriate when the victim is over the age of 18. See *Madison v. State*, 329 Ga. App. 856, 868 (4) (766 SE2d 206) (2014). Because D. W. was under this age at the time of the alleged criminal acts in this case, we do not need to address this doubt further.

(c) We also reject Wright's argument that the trial court erred when it charged the jury as to the element of penetration.

The trial court instructed the jury that "the necessary penetration need only be slight, and proof of such penetration, if any, may be direct or circumstantial. It is not necessary that the vagina itself be entered. An entering of the anterior of the female sex organs, known as the vulva or labia, is sufficient." Wright argues that the final sentence of this instruction unnecessarily confused the jury because it introduced medical terminology beyond the ken of the average juror and because it was not necessary for the jurors to understand the relevant legal standard.

Even if the use of this medical terminology by itself was potentially confusing to an average juror,[4] we conclude that Wright has not shown that he was harmed by this instruction. During her testimony, the nurse who performed the sexual assault exam on D. W. explained the term "labia" to the jury and provided a basic outline of female anatomy using a plastic model. Wright also "has offered no evidence that the jury was confused or misled by this instruction or that the jury did not follow the instruction as given." *Morris v. State*, 308 Ga. 520, 530 (4) (842 SE2d 45) (2020).

---

[4] We note that the pattern jury instructions on the issue of penetration use the terms "labia" and "vulva." See Georgia Suggested Pattern Jury Instructions 2.30.12.

9

Finally, the trial court's instruction was a correct statement of the law. See *Smith v. State*, 361 Ga. App. 436, 438 (1) (a) (864 SE2d 645) (2021). We thus conclude that the trial court correctly instructed the jury as to the element of penetration. See *Morris*, supra, 308 Ga. at 530 (4) (no error in jury instruction when it was a correct statement of the law and, while potentially lengthy and confusing, the appellant provided no evidence that the jury was confused or misled by the instruction's wording).

(d) Finally, Wright argues that the trial court erred when it charged the jury that sexual intercourse with an intoxicated, asleep, or unconscious woman can constitute rape because this instruction needlessly raised the issue of consent before the jury when consent was not at issue. We conclude the trial court erred by including this instruction, but this error was harmless.

The trial court instructed the jury that "[s]exual intercourse with a woman whose will is temporarily lost from intoxication or unconsciousness arising from the use of drugs or other causes or sleep is rape." This legal tenet describes the doctrine of "constructive force," which reduces the amount of force required to show forcible rape in situations where a "victim is physically or mentally unable to give consent because she is intoxicated" or asleep. (Citation omitted.) *Rendon-Villasana v. State*,

360 Ga. App. 769, 774-775 (1) (c) (861 SE2d 462) (2021). "In the ordinary case the force to which reference is made is not the force inherent in the act of penetration but is the force used to overcome the resistance of the female." (Citation omitted.) *Drake v. State*, 239 Ga. 232, 234 (1) (236 SE2d 748) (1977), superseded by statute on other grounds as stated by *Loyd v. State*, 288 Ga. 481, 492 (4) (c) (705 SE2d 616) (2011). However, [w]hen the victim is physically or mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force . . . [becomes] the use of such force as is necessary to effect the penetration made by the defendant." (Citation omitted.) Id. at 234-235 (1).

The logic of constructive force, however, breaks down when applied to a child under the age of consent because such a victim is not capable of consenting to any sexual intercourse as a matter of law, *Forbes v. State*, 284 Ga. App. 520, 523 (2) (644 SE2d 345) (2007), and it does not make legal sense to distinguish scenarios based on the lack of ability to consent when lack of consent has already been conclusively proven by the victim's age. Additionally, without a showing of actual force beyond that required to effect the penetration, there would be little difference between the proof required to show the crime of forcible rape under OCGA § 16-6-1 and that required for the crime of statutory rape under OCGA § 16-6-3, which already

11

criminalizes the act of sexual intercourse with an underage victim without requiring proof of force or lack of consent. See, e.g., *State v. Collins*, 270 Ga. 42, 44 (508 SE2d 390) (1998), superseded by statute on other grounds as stated in *State v. Lyons*, 256 Ga. App. 377, 378-379 (568 SE2d 533) (2002), ("As a practical matter, few defendants would be charged with [statutory rape] if both force and consent were presumed as a matter of law in forcible rape cases involving victims under the age of consent.").

Because of these concerns, our Supreme Court has stated that the doctrine of constructive force applies "only where children are not involved." *Drake*, supra, 239 Ga. at 234 (1). And, in the context of discussing other sexual crimes, we have similarly concluded that "the State must prove actual force in rape cases involving children between the ages of ten and sixteen" and cannot rely on constructive force. (Citation omitted.) *Melton v. State*, 282 Ga. App. 685, 694 (2) (c) (639 SE2d 411) (2006). Thus, because the doctrine of constructive force did not apply in this case as a matter of law, the trial court erred by instructing the jury on this principle.

"[T]he trial court's giving of an erroneous jury instruction does not necessarily require reversal[,]" however. *Matos-Bautista*, supra, 353 Ga. App. at 778 (1). "An erroneous jury instruction is not judged in isolation, but rather is considered in the

12

context of the entire jury charge and the trial record as a whole, and does not constitute grounds for reversal unless the error causes harm." (Citation omitted.) Id. After reviewing the entire record, including the evidence of guilt against Wright recounted above (and discussed in Division Two *infra*) on the issue of force, we conclude that the evidence was overwhelming such that any erroneous instruction was harmless. See *Huckabee v. State*, 287 Ga. 728, 734 (6) (b) (699 SE2d 531) (2010) (erroneous jury charge was harmless in light of the overwhelming evidence of the defendant's guilt); *Burlison v. State*, 353 Ga. App. 341, 344 (836 SE2d 736) (2019) (same); see also *Haynes v. State*, 326 Ga. App. 336, 338 (1) (756 SE2d 599) (2014) ("[T]he quantum of evidence to prove force against a child is minimal. And such force may be proven by direct or circumstantial evidence.") (citations and punctuation omitted).

Accordingly, we conclude that Wright has not shown that the trial court committed reversible error when it charged the jury.

2. Wright additionally argues that the evidence was insufficient to support his convictions. We conclude that the evidence was indeed sufficient to support each conviction.

13

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations omitted.) *Anderson v. State*, 338 Ga. App. 802 (792 SE2d 92) (2016).

As noted above, "[a] person commits the offense of rape when he has carnal knowledge of [a] female forcibly and against her will[.]" OCGA § 16-6-1 (a) (1). And, "[a] person commits the offense of incest when such person engages in sexual intercourse or sodomy . . . with a person whom he or she knows he or she is related to either by blood or by marriage as follows: Father and child or stepchild[.]" OCGA § 16-6-22 (a) (1).

Here, D. W. testified that Wright, who is her father, "tried to penetrate inside of [her]." According to D. W., Wright did "not fully" have sex with her and his penis did not go "inside of" her, but she felt it. D. W. stated that she was "frozen" and "scared" during the incident because Wright was "bigger than [her]" and because "[h]e's [her] dad." A sexual assault exam found a "very large amount" of male DNA

14

and sperm cells in D. W.'s vagina that matched Wright's DNA. This evidence was sufficient to establish the crimes of rape and incest. See *Tinson v. State*, 337 Ga. App. 83, 84-85 (1) (785 SE2d 914) (2016) (evidence was sufficient to support incest conviction where father touched his daughter's genitals and engaged in sexual intercourse with her); *Thomas v. State*, 306 Ga. App. 8, 9-10 (701 SE2d 525) (2010) (evidence was sufficient to support forcible rape conviction where the defendant entered the child victim's room and engaged in intercourse, and the victim stated that she did not fight back because of the defendant's size and because she was shocked and scared).

Although Wright argues that there were conflicts in the evidence and that the evidence was not overwhelming, "[c]onflicts in the testimony of witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve." (Citation omitted.) *Williams v. State*, 326 Ga. App. 665, 666 (1) (757 SE2d 267) (2014). As stated above, it is not our place on appeal to "weigh the evidence or determine witness credibility," but "we only determine[] whether . . . there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case." (Citation omitted.) *Anderson*, supra, 338 Ga. App. at 802. Because the

15

State presented sufficient evidence to establish that Wright committed rape and incest, his challenge to the sufficiency of the evidence fails.

Accordingly, we affirm Wright's convictions, sentence, and the denial of his motion for a new trial.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur.*